827 P.2d 859

C.K. "Rocky" MEDINA,
Plaintiff–Appellee,

v.

GRAHAM'S COWBOYS, INC.,
Defendant–Appellant,

and

Steven Trujillo, Defendant.

No. 12496.

Court of Appeals of New Mexico.

Feb. 4, 1992.

Jeff Romero, Albuquerque, for plaintiff-appellee.

Mark E. Komer, Jerrald J. Roehl, Corbin P. Hildebrandt, the Roehl Law Firm, P.C., Albuquerque, for defendant-appellant.

## OPINION

HARTZ, Judge.

On December 13, 1984, Steven Trujillo assaulted C.K. "Rocky" Medina (Medina) in the parking lot of Graham's Cowboys, Inc. (Cowboys). Medina filed a complaint for personal injury against Trujillo and Cowboys on April 1, 1985. Medina raised three theories of liability against Cowboys: (1) Cowboys was liable under the doctrine of respondeat superior because Trujillo was acting within the course and scope of his employment with Cowboys when he assaulted Medina, (2) Cowboys was liable for negligently hiring and supervising Trujillo, and (3) Cowboys was liable for failure to comply with its duty to provide safe premises for its patrons. After a non-jury trial the district court rejected the respondeat superior claim but held Cowboys liable on the other two theories. Cowboys appeals on the grounds that (a) liability was not proper under either theory, (b) substantial evidence did not support the damage award, and (c) under the doctrine of comparative fault, Cowboys should have been held liable for only a portion of Medina's damages. We affirm.

## I. LIABILITY

Because we can sustain the judgment under Medina's negligent hiring theory, we need not address the claim of premises liability.

The district court made the following findings concerning the negligent hiring and training of Trujillo:

10. Trujillo's employment with Cowboys was that of a doorman.

11. The duties of a Cowboys doorman included assisting in maintaining peace and order in Cowboys, using force if necessary.

12. Cowboys doormen were necessarily in constant contact with members of the public, most of whom would have been drinking and ma[n]y of whom might tend to be argumentative.

. . . .

15. Trujillo had been involved in several fights at Cowboys and in the parking lot as a Cowboys patron.

16. Trujillo was unfit to be employed as a Cowboys doorman.

17. Cowboys knew or should have known that Trujillo had previously been involved in fights at Cowboys and elsewhere and that he was unsuitable for employment considering the risk he posed to those with whom he would foreseeably come into contact during his employment.

We accept these findings as correct because Cowboys' brief-in-chief does not attack these findings or challenge the contention that Cowboys was negligent in hiring Trujillo. In addition, the district court concluded:

7. Trujillo's attack on Plaintiff was foreseeable by Defendant Cowboys.

8. Cowboys was negligent in hiring and training Trujillo, which negligence was the proximate cause of Plaintiff's injuries.

■ Cowboys predicates its challenge to the negligent-hiring theory on the ground that Trujillo was not on duty the night of the assault. (There was also a substantial dispute at trial as to whether Trujillo had ever been hired by Cowboys, but there was clearly sufficient evidence to justify the district court's finding in that regard, and Cowboys does not press that point in its brief-in-chief.) Because Trujillo was not on duty, Cowboys argues, Medina did not meet Trujillo as a direct result of the employment, and therefore Cowboys had no duty to Trujillo, the act of hiring Trujillo could not be the proximate cause of Medina's injuries, and Cowboys could not have reasonably foreseen that hiring Trujillo would result in the injury to Medina.

Even if he was not on duty, however, Trujillo was present on the premises at Cowboys' request. *Cf. Restatement (Sec-*

*ond) of Agency* §§ 219 cmt. d, 233 cmt. c (1957) [hereinafter *Restatement (Second) of Agency* ] (relating to responsibility of employer for acts of on-call employee). The district court made the following finding:

> 9. Trujillo was not actually working when the incident occurred. He had come to Cowboys to work that night and had been told by a Cowboys employee to remain, and he did remain inside Cowboys or in the parking lot. Trujillo was not paid for waiting to see [i]f he would be needed to work.

At trial Cowboys vigorously contested that Trujillo was on call the evening of the incident. Nevertheless, there was sufficient evidence to support the district court's finding. One witness testified that Trujillo was wearing a jacket with the Cowboys logo on it. Trujillo himself had testified in a deposition read at trial that "if I wasn't working I probably would have left and went home"; and he testified at trial that the assistant door manager had told him "to show up in case they needed me." Although Trujillo encountered Medina in the parking lot, Trujillo testified that he was heading toward the front door of the bar at the time.

In its reply brief Cowboys challenges the finding that Trujillo remained inside Cowboys or in the parking lot. It points to evidence that Trujillo was returning from a nearby nightclub at the time of the incident. Even were we to consider a challenge to a finding of fact not made until a reply brief, *but see Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 625, 698 P.2d 887, 898 (Ct.App.1985) (issue raised for first time in reply brief will not be considered), the alleged error does not affect the result. The point is that the district court could properly find that at the time of the incident Trujillo was on the premises at Cowboys' request for the purpose of being available to work.

■ The district court's findings establish the duty of Cowboys to Medina. Liability for negligent hiring "flows from a direct duty running from the employer to those members of the public whom the employer might reasonably anticipate would be placed in a position of risk of injury as a result of the hiring." *Valdez v. Warner*, 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct.App.1987). *See Garcia v. Duffy*, 492 So.2d 435 (Fla.App.1986). That duty encompasses a duty of Cowboys not to endanger patrons by negligently hiring violent persons who are on call on the premises at Cowboys' request.

■ We also sustain the district court's conclusions regarding proximate cause and foreseeability. The district court's findings establish that Trujillo encountered Medina as a direct result of Trujillo's employment relationship with Cowboys. Also, Findings Nos. 16 and 17, regarding Trujillo's propensity to engage in fights, provide a proper basis for concluding that Cowboys could have reasonably foreseen the danger of Trujillo's engaging in a fight with a patron if Trujillo were asked to remain "on call" on the premises.

We therefore affirm the district court's determination that Cowboys was liable for damages under a negligent-hiring theory.

## II. DAMAGES

■ Cowboys contends that the damage award was not supported by substantial evidence. The sole point raised in its brief-in-chief is that there was insufficient evidence to support a finding that Medina's condition had remained and would remain the same. We acknowledge that Cowboys offered evidence to the contrary, but our function is not to reweigh the evidence; it is only to determine whether there was substantial evidence to support the district court's findings. *See Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984).

Cowboys' brief-in-chief fails to note the following testimony by Dr. Don F. Seelinger, a neurologist who had examined Medina in July 1986:

> Q. Let me ask you a hypothetical question if I could. If Mr. Medina today were to tell you that he's continuing to have headaches; he continues to have memory lapse and he continues to complain of the

symptoms that he complained to you, pointed out to you at the same time that you saw him, would you have an opinion as to whether or not his condition, number one, had improved and, number two, would be likely to improve?

A. If the symptoms were essentially unchanged, I would think subsequent future improvement would be unlikely. If I were to learn that the symptoms were essentially unchanged, that would not surprise me greatly even if someone had been in a treatment program.

Q. Why is that?

A. Because the kind of complaints that are seen following trauma often are sustained and enduring and continue to be problems for long, long periods of time, if not indefinite.

Medina testified that he was suffering the same symptoms he had previously reported to Dr. Seelinger.

This evidence is sufficient to sustain a finding that Medina's condition had not improved and was unlikely to improve. In its reply brief Cowboys suggests that Medina's testimony concerning his symptoms at the time of trial cannot be considered in the absence of medical testimony establishing those symptoms. Cowboys cites no authority for that proposition, and we know of none. Dr. Seelinger's response was predicated on the continuation of symptoms described by Medina, not on the existence of symptoms that could be detected only by a medical expert. There is no reason to require that Medina express his symptoms to a physician rather than testify to them at trial.

We therefore reject Cowboys' challenge to the amount of damages.

## III. COMPARATIVE FAULT

Cowboys' final contention is that its fault should be compared to the fault of Trujillo and it should be liable only for the percentage of fault attributable to it. This argument raises an issue of first impression in this jurisdiction. New Mexico abolished joint and several liability for negligent tortfeasors in *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579

(Ct.App.1982). Yet no New Mexico opinion has addressed what happens when one tortfeasor commits an intentional tort and a concurrent tortfeasor is negligent. *Cf. Trujillo v. Berry*, 106 N.M. 86, 738 P.2d 1331 (Ct.App.1987) (considering strict products liability and comparative fault). In particular, no case has addressed what happens when the negligent tort was the tort of negligently hiring the intentional tortfeasor. The New Mexico statute on several liability provides that joint and several liability still applies "to any person or persons who acted with the intention of inflicting injury or damage[.]" NMSA 1978, § 41–3A–1(C)(1) (Repl.Pamp.1989). This statute does not, however, address the liability of a negligent tortfeasor when a co-tortfeasor committed an intentional tort; and, in any case, the statute does not apply here because the complaint was filed before July 1, 1987. *See* 1987 N.M. Laws, ch. 141, § 5.

We have found only one case in point from another jurisdiction. Although Kansas has abolished joint and several liability for concurrent negligent tortfeasors, the Kansas Supreme Court recently held that an employer is liable in full for damages caused by the intentional tort of a negligently retained servant. *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587 (Kan.1991). The court wrote, "Negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent." *Id.* 819 P.2d at 606. To determine whether we agree with the Kansas holding, we look to the related body of law for underlying principles that suggest the proper rule. We reach the result that would be required under Kansas law, but our rationale is narrower than that adopted by the Kansas court.

We start with the notions of fairness embodied in New Mexico's adoption of comparative negligence, *see Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), and the abolition of joint and several liability between negligent tortfeasors. *See Bartlett v. New Mexico Welding Supply, Inc.* Un-

der those decisions, when an injury is the consequence of the concurrent negligence of several persons, each is apportioned a percentage of the blame and is responsible for that percentage of the damage caused. If one negligent party is only five percent at fault, that party must bear only five percent of the loss. It would seem inconsistent with this approach to hold a negligent tortfeasor responsible for the entirety of the damage if the concurrent tortfeasor happens to have committed an intentional tort rather than a negligent tort. Why should a negligent tortfeasor be worse off when the concurrent tortfeasor is "evil" rather than merely inattentive? *See* William E. Westerbeke & Reginald L. Robinson, *Survey of Kansas Tort Law*, 37 Kan. L.Rev. 1005, 1049 (1989). Thus, the first rule that suggests itself is that the fault of Cowboys and the fault of Trujillo should be compared, with Cowboys bearing responsibility for only its percentage of the damage suffered by Medina. *See* Jake Dear & Steven E. Zipperstein, *Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations*, 24 Santa Clara L.Rev. 1 (1984) (advocating the application of comparative fault to intentional torts). (Of course, Trujillo, as an intentional tortfeasor, could still be liable for the entire damage. *See* § 41–3A–1(C)(1).)

On the other hand, the abolition of joint and several liability when cotortfeasors are negligent does not necessarily undermine principles of vicarious liability. There are still situations in which a party who is without fault is responsible for paying compensatory damages caused by the fault of another. *See* § 41–3A–1(C)(2). To take the example closest in point, the rule of respondeat superior provides that a faultless employer is nevertheless liable for torts committed by an employee in the course and scope of employment. *Gonzales v. Southwest Sec. & Protection Agency*, 100 N.M. 54, 665 P.2d 810 (Ct.App.1983). Because liability is not predicated on the fault of the employer, the abolition of joint and several liability does not eliminate respondeat superior liability.

■ We recognize that the traditional rule of respondeat superior does not apply in this case. The district court found that Trujillo's tort was not committed within the course and scope of his employment with Cowboys, presumably because Trujillo's assault on Medina was not in any way "actuated ... by a purpose to serve" Cowboys. *Restatement (Second) of Agency, supra,* § 228(1)(c); *see id.* § 235. Nevertheless, we believe that it is a natural extension of the doctrine of respondeat superior to hold that an employer who is liable for negligently hiring an intentional tortfeasor should be vicariously liable for the fault attributed to the tortfeasor-employee.

Scholars have provided a number of justifications for the doctrine of respondeat superior, such as distribution of costs, the master's right of control over the servant, and the encouragement of risk avoidance and prevention. *See generally Restatement (Second) of Agency, supra,* § 219 cmt. a; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 69, at 500–01 (5th ed. 1984) [hereinafter *Prosser* ]; 2 Floyd R. Mechem, *A Treatise on the Law of Agency* § 1856 (2d ed. 1914) [hereinafter Mechem]; Warren A. Seavey, *Handbook on the Law of Agency* § 83, at 141 (1964) [hereinafter Seavey]; William O. Douglas, *Vicarious Liability and Administration of Risk*, 38 Yale L.J. 584, 720 (1929) [hereinafter Douglas]; Fleming James, Jr., *Vicarious Liability*, 28 Tul.L.Rev. 161, 165–73 (1954) [hereinafter James]; C. Robert Morris, Jr., *Enterprise Liability and the Actuarial Process—The Insignificance of Foresight*, 70 Yale L.J. 554 (1961); Young B. Smith, *Frolic and Detour*, 23 Colum.L.Rev. 444, 716 (1923) [hereinafter Smith]. There is less agreement on the strength of the various justifications than on the conclusion to which they point.

Although the traditional statement of the respondeat superior rule limits liability to employee torts committed within the scope of employment, *see Restatement (Second) of Agency, supra,* § 219(1), commentators explaining the rule often speak in terms of greater generality. Professor Seavey wrote that vicarious liability is a just result "if it can be said rationally that the employ-

ment is the primary cause of the tort." Seavey, *supra*, at 148. *Prosser* states, "The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." *Prosser, supra*, at 500. Professor James explained that the doctrine covers unauthorized acts that are "reasonably foreseeable" in the broad sense that the risk "may fairly be regarded as typical of or broadly incidental to the enterprise[.]" James, *supra*, at 175. Professor Mechem wrote that the master is liable "[f]or those [acts or defaults of a servant] and those only for which he can in some way fairly be deemed to be responsible." Mechem, *supra*, at 1459.

The above statements by commentators suggest that the doctrine of respondeat superior might properly be extended to impose upon employers vicarious liability for any tort by a servant that is a reasonably foreseeable result of the employment relationship. *Cf. Gonzales v. Southwest Sec. & Protection Agency*, 100 N.M. at 55, 665 P.2d at 811 (following *Restatement (Second) of Agency, supra,* § 245 in imposing liability on master for intended tortious harm by servant that was "not unexpectable"). Such an extension of vicarious liability of employers may be inappropriate in some contexts, but we see no principled ground upon which to deny vicarious liability here—where the district court found both foreseeability (in the narrow sense of the term ordinarily employed in tort law) and causal connection of the tort with the employment—when such liability is imposed in circumstances coming within the traditional rule of respondeat superior. In other words, if the special nature of the employer-employee relationship requires that a faultless employer pay for all damages caused by a negligent employee acting within the scope of employment, then it should also require an employer who has negligently hired an employee to pay for all damages arising from an intentional tort of the employee when the tort was a reasonably foreseeable result of the negligent hiring. Indeed, some of the justifications

for vicarious liability under respondeat superior, such as encouragement of risk avoidance and prevention, *see* Douglas, *supra*, at 588; James, *supra*, at 168, apply with greater force when the employer was negligent in hiring the servant.

Our view is not undercut by the absence of authority placing negligent hiring cases under the rubric of respondeat superior. After all, respondeat superior was developed as a doctrine to impose vicarious liability without fault upon employers. In a negligent hiring case, fault of the employer is present. Under a regime of joint and several liability, there is no need to theorize regarding the vicarious liability of such a negligent employer for the fault of an employee, because the employer is liable for all damages anyway, once negligence and causation are found. It has been only recently that a few jurisdictions have limited the application of joint and several liability in tort cases. Therefore, it is not surprising that the question posed here apparently has been considered in only one reported decision. *Kansas State Bank & Trust Co. v. Specialized Transp. Servs.*

This is not to say that principles of comparative negligence may not still apply in the negligent hiring context. For example, if the victim of the negligently hired employee has also been negligent (say, in exposing himself or herself to the danger), then that fault of plaintiff may reduce the damages for which the negligently hiring employer is liable, even if the employee who committed the intentional tort would still be liable for all the damages. This case, however, does not require us to decide that issue.

## IV. CONCLUSION

For the above reasons, we affirm the judgment below.

IT IS SO ORDERED.

ALARID, C.J., and PICKARD, J., concur.