1999-NMCA-011

971 P.2d 851

**Martha MEDINA, Plaintiff–Appellant,**

v.

**Kathy FULLER, Defendant–Appellee.**

**No. 18,070.**

Court of Appeals of New Mexico.

Nov. 2, 1998.

Michael W. Lilley, Michael W. Lilley, P.A., Las Cruces, for Appellant.

Mary T. Torres, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Las Cruces, for Appellee.

*OPINION*

PICKARD, J.

{1}  The Tort Claims Act defines scope of duties as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41–4–3(G) (1995). Defendant, a Doña Ana County Deputy Sheriff, was on her way home from work on July 2, 1993, in her sheriff's assigned, unmarked police unit when she was in an accident with Plaintiff. Plaintiff's first attorney (not her current attorney) filed suit more than two years after the accident. If Defendant was in the scope of her duties, then the suit was time barred. *See* NMSA 1978, § 41–4–15(A) (1977) (Tort Claims Act statute of limitations is two years). The trial court ruled as a matter of law that Defendant was in the scope of her duties and granted summary judgment for Defendant. Plaintiff appeals, and we affirm.

**FACTS**

{2}  The evidence before the trial court on the motion for summary judgment was largely undisputed. Defendant left work at about 5:00 p .m., and the accident occurred about ten minutes later. The accident occurred before Defendant arrived home for the evening. The precise facts of what Defendant did between 5:00 and 5:10 are disputed, but the trial court ruled that the dispute was immaterial. It is undisputed that Defendant stopped to see her husband at his place of employment and then left to continue home. Before she arrived home, she recalled that she left something at her husband's place of employment and turned around to retrieve it. The item left may have been her department notebook, but it may have been something else. For purposes of this opinion, we assume that it was something else.

{3}  When Defendant was first interviewed, she said that she was "off duty [at the time of the accident] because she had left work." Her later affidavit, however, claimed that she was on duty.

{4}  The Sheriff's Department has a written policy regarding take-home vehicles, which in its entirety states:

Investigators have been entrusted by the Sheriff of this Department with personally assigned, unmarked police units. It will be the responsibility of the Investigators to maintain their respective units in a high state of serviceability as well as cleanliness. These are police vehicles and are to be used only for official departmental business. *If* the Investigator is ON–CALL after regular working hours, weekends, or holidays, he must be *immediately* available to respond to any situation anywhere in this County. In order to accomplish this, the ON–CALL Investigator must have his unit immediately available to him. On these occasions, he will be authorized to use his unit for personal business. He must use great discretion when this is done and this privilege must not be abused. He will not be allowed to consume alcoholic beverages when he is ON–CALL and subject to having to drive his police unit.

ON–CALL duty is not intended to be restrictive in nature, and this policy is being adopted to allow the ON–CALL Investigator a certain degree of freedom on his off time. He is being allowed to go about his personal business with the use of the departmental vehicle as long as he is immediately available either by police radio or can be reached by phone. (When an Investigator is not on-call, his family/children are not allowed in the car.)

{5}  The current Sheriff testified that Defendant was a supervisor and, as such, she was on call 24 hours a day. The then Sheriff drew a distinction between office hours, on call or standby, and the hybrid situation of being on the way home. Office hours are 8:00 a.m. to 5:00 p.m. for Defendant. On call or standby is when an officer is subject to being immediately called back to duty. The then Sheriff testified that when an officer is on her way home, "I didn't count her off duty until she pulled up at home and let the dispatch know 'I'm at home.' Then I called her off duty, standby." Further, "She would have been on call after she arrived at her residence initially. But as I explained, the time between the office and her arriving the

first time at her residence would have been an extension of her workday."

{6} Defendant explained in her deposition that, from the time she left her home to go to the Sheriff's office until the time she arrived back home, she had her badge on, she had her gun on, and she had her radio on and was available to respond to calls. Thus, she was on duty. Defendant agreed that being on duty was transacting the County's business, and when asked "Why is going to your house or from your house business pertaining to Doña Ana County?" she answered,

> Because if it wasn't, then Doña Ana County would not provide me with a take-home car. I would jump into my own car, drive to the sheriff's department, pick up their car, and then go transact their business. But they obviously have felt that it's important that I have a take-home car in order to be able to quickly transact their business.... [T]he minute you are in that car and turn it on and turn on the radio, you are in a position where you may be transacting business ... [and] are required to turn on the radio, required to be available, and to respond.

{7} Defendant stated that she reported the accident to the County's insurer, and not to her personal insurer, because "[she] was a sheriff's department employee authorized to be in the sheriff's department car." Plaintiff's first attorney filed a notice of claim under the Tort Claims Act, which Defendant construed to mean that he agreed with her that she was on duty at the time of the accident.

{8} It is undisputed that Defendant was not on her way to any crime scene and had not been dispatched at the time of the accident. Defendant, as a supervisor, did not receive any extra compensation for being on call.

## DISCUSSION

### A. Scope of Duties Versus Scope of Employment

{9} The issue we address is whether Defendant was within the scope of her duties while she was driving the Sheriff's Department car home from work. We addressed a similar issue in *Narney v. Daniels*, 115 N.M. 41, 846 P.2d 347 (Ct.App.1992). There, although the case was "clearly one arising under the Tort Claims Act," both the trial court's and this Court's decisions were "limited to the common-law concept of course and scope of employment." *Id.* at 47, 846 P.2d at 353; *see also id.* at 47–50, 846 P.2d at 353–56. "[N]either party briefed on appeal any issue concerning the Tort Claims Act." *Id.* at 47, 846 P.2d at 353. In this case, the parties acknowledge that "scope of duties," as that term is defined in Section 41–4–3(G), is the sole issue before us although Plaintiff briefs the issue as though the term carries the same meaning as "course and scope of employment," as that phrase is used in the common law governing vicarious liability.

{10} We expressly did not decide whether "scope of duties" is coterminous with "course and scope of employment" in either *Narney* or *Rivera v. New Mexico Highway & Transportation Department*, 115 N.M. 562, 563, 855 P.2d 136, 137 (Ct.App.1993). We note that our Supreme Court, in a case in which the difference between these two phrases also did not have to be decided, in dicta said, "[T]his requirement ['acting within the scope of their duties'] simply means that an officer must be acting within the scope of employment in order to be sued in his or her capacity as a law enforcement officer [under the Tort Claims Act]." *Weinstein v.. City of Santa Fe*, 121 N.M. 646, 650, 916 P.2d 1313, 1317 (1996). . However, we consider it noteworthy that our legislature chose the phrase "scope of duties" and then further defined that phrase in a particular way. We thus first concentrate on the statutory language and the purpose of our Tort Claims Act. *See Milton v. Mitchell*, 762 P.2d 372, 377 (Wyo. 1988) (explaining that "scope of duties" is different from "scope of employment" and construing former phrase in light of confined purpose of Wyoming tort claims act); *Folz v. State*, 115 N.M. 639, 643, 857 P.2d 39, 43 (Ct.App.1993) (reading New Mexico's Tort Claims Act liberally to give effect to its remedial intentions). Although we first focus on the statutory language, we take comfort in knowing that the result would be the same under the common law test. Accordingly, we analyze the case under that test as well. We finally discuss the standard of review and

whether certain factual issues preclude summary judgment.

## B. Scope of Duties

{11} The definition of scope of duties in the Tort Claims Act is those duties that the "employee is requested, required or authorized to perform ... regardless of the time and place of performance." Section 41-4-3(G). In *Candelaria v. Robinson*, 93 N.M. 786, 792-93, 606 P.2d 196, 202-03 (Ct.App. 1980), we looked to the statutes explaining the duties of the public employees at issue in that case to determine what was "required or authorized." The statutes setting forth the duties of sheriffs include NMSA 1978, § 29-1-1 (1979), which requires deputy sheriffs to "investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware...." The written policy regarding take-home vehicles and the testimony of both Defendant and her supervisor established without contradiction that Defendant was authorized or permitted, if not required, to use the vehicle to go to and from work in order to facilitate her investigative duties.

{12} Not only were Defendant's actions in driving the take-home vehicle home from work within the literal definition of "scope of duties," but also a holding so establishing would be consistent with the purposes of the Tort Claims Act. The purposes of the definition in the Tort Claims Act are to make government responsible for the torts of its employees for which immunity is waived to a similar extent as a private employer would be under the doctrine of respondeat superior and to indemnify the employee for acts occurring in the scope of the employee's duties. *See* NMSA 1978, § 41-4-4(A) (1996) (government employees acting within the scope of duty are granted immunity except as waived in later sections of the Act); § 41-4-4(D) (government shall pay for judgment against public employee for torts committed while acting in scope of duty); NMSA 1978, §§ 41-4-5 to -12 (1976, as amended through 1991) (waiving immunity for various acts, all performed by government employees acting within the scope of their duties).

## C. Common Law Test

{13} Analysis of the common law doctrine of scope of employment, about which there is abundant authority, while not precisely on point in this case involving the statute, nonetheless reinforces our decision here.

### 1. Justification for Doctrine

{14} In *Medina v. Graham's Cowboys, Inc.*, 113 N.M. 471, 475, 827 P.2d 859, 863 (Ct.App.1992), we discussed the form of vicarious liability embraced in the doctrine of respondeat superior. We noted that scholars advanced several justifications for the doctrine—"distribution of costs, the master's right of control over the servant, and the encouragement of risk avoidance and prevention." *Id.* In its most general form, the scholars agree that this form of vicarious liability should be present when it can fairly be said that the injury arises from the employment or, stated otherwise, it is the employment that causes the tort. *See id.* at 475-76, 827 P.2d at 863-64. *Cf. Konradi v. United States*, 919 F.2d 1207, 1210 (7th Cir. 1990) (arguing that the cases are "reticent about the considerations that animate their decisions" and preferring to apply an economic analysis). We believe that the scholarly references in *Medina* and several other cases in the specific area of use of employer-owned vehicles for on-call employees lend support for the result in this case.

### 2. On-Call Status

{15} The Massachusetts Supreme Judicial Court stated that "[m]ost jurisdictions have ruled that the mere fact of being on call does not place employees within the scope of their employment." *Clickner v. City of Lowell*, 422 Mass. 539, 663 N.E.2d 852, 855 (Mass.1996). *Clickner* affirmed a trial judge's determination, following a bench trial, that an on-call police officer who was in his police unit and on his way to work after having received a page, but who was returning from a golf tournament in a drunken state and was not yet within his jurisdiction, was not within the scope of his employment. *See id.* at 855-56. *Clickner* relied on *Sherar v. B & E Convalescent Ctr.*, 49 Cal.App.3d

227, 122 Cal.Rptr. 505, 506, 508 (Ct.App.1975) (on-call employee who was reporting to regular shift, and not to a call, and whose job duties did not involve driving, was not within scope of employment as a matter of law), *Ehlenfield v. State,* 62 A.D.2d 1151, 404 N.Y.S.2d 175, 177 (App.Div.1978) (on-call police officer not in scope of employment as a matter of law when bringing a refrigerator to the station in his own personal vehicle on his own time), and *Evington v. Forbes,* 742 F.2d 834, 835–36 (4th Cir.1984) (on-call employee who was traveling to work after being called in for an emergency could be found by the jury to be within scope of employment). *See Clickner,* 663 N.E.2d at 855–56 n. 6.

{16} Based on these cases, it appears that the test asks exactly what the employee was doing at the time of the injury-producing accident. *See Le Elder v. Rice,* 21 Cal. App.4th 1604, 26 Cal.Rptr.2d 749, 751–53 (Ct. App.1994) (affirming bench-trial decision that employee who was on call in his own car for which he was reimbursed for business miles, but was taking his children to school, was not in scope of employment); *Henriksen v. City of Rialto,* 20 Cal.App.4th 1612, 25 Cal. Rptr.2d 308, 310, 312–13 (Ct.App.1993) (affirming summary judgment in favor of employer that off-duty police officer who was authorized to carry weapon at all times was not in scope of employment when he was not within his working hours, was not utilizing his authority as an officer, and was not in the course of acts he was authorized to perform, but was rather walking into a friend's house to have a beer and was carrying his weapon in case he needed it for emergencies). However, the matter is not so simple.

### 3. On Call Plus Additional Factors

{17} *Le Elder* stated the appropriate polices:

Because it is unjust to exonerate a business from responsibility for injuries occurring in the course of its characteristic activities, an employee's scope of employment is determined by ascertaining whether the risk involved was typical or broadly incidental to the enterprise undertaken by the employer. Where the employee's conduct has substantially devi-

ated from his or her duties, it is unjust to hold the employer liable. Thus, it is necessary to determine the main purpose of injury-producing activity: If it was the pursuit of the employee's personal ends, the employer is not liable.

*Id.* at 751 (citations omitted). Based on these policies, there are a number of courts that have held that an on-call employee who is driving the employer's vehicle for the purposes of the employer's business, although on his or her way home from work, is still in the scope of employment. *See, e.g., Evans v. Southwest Gas Corp.,* 108 Nev. 1002, 842 P.2d 719, 722–23 (Nev.1992) and cases cited therein. The rationales of these cases, as well as examination of the applicable New Mexico uniform jury instruction, support an affirmance here.

{18} We discuss particularly those cases that have ruled as a matter of law because cases which simply affirmed a fact finder's decision are not strictly relevant here, where the issue arose on summary judgment and one issue we must address is whether there are any material factual issues. *Evans* was a summary judgment case in which the trial court granted summary judgment to the employer, ruling it could not be vicariously liable to the plaintiff because the employee was not acting within the scope of his employment as a service technician when he had completed his work for the day and was on his way home in the company-owned van. *See id.* at 720–21. The appellate court reversed and ruled, as a matter of law, that the evidence compelled a decision that the employee was acting in the course and scope of his employment. *See id.* at 722–23. The factors compelling this result were that the employer required on-call technicians to take their vans home to facilitate their response to emergency calls and protect the very valuable tools carried in the van, the employer restricted the employee's use of the van so that he would be within radio call of the shop and he was not permitted to use the van for more than de minimus personal use, and the employer owned and maintained the van. *See id.* at 722. Thus, although the employee was not responding to an emergency call at the time of the accident, he was both under

the employer's control and furthering the employer's purpose at that time. *See id.*

{19} Among the cases *Evans* relied on was *Lazar v. Thermal Equipment Corp.*, 148 Cal.App.3d 458, 195 Cal.Rptr. 890 (Ct.App. 1983). That case was an employer's appeal from the entry of a judgment notwithstanding the verdict for the plaintiff after the jury had found for the defendant on the scope-of-employment issue. The employee in that case was a project engineer, who both as a fringe benefit and to facilitate his employment, was permitted to drive a company truck to and from work and also to use it for personal purposes. *See id.* at 891. The employee was on call constantly as a troubleshooter and was sometimes required to proceed from home directly to a work site. *See id.* The accident occurred as the employee was on his way home, but was going in the opposite direction to run a brief personal errand. *See id.* at 890. While stating the modern justification for the doctrine of respondeat superior in terms similar to those found in *Medina*, 113 N.M. at 475–76, 827 P.2d at 863–64, and *Le Elder*, 26 Cal.Rptr.2d at 751, the court ruled as a matter of law that the employee was within the course and scope of employment because the employer derived a tangible benefit from the employee's commute in the employer's vehicle and the employee's errand was a minor one, performed on the way home, and was foreseeable. *Lazar*, 195 Cal.Rptr. at 892–94. Thus, the minor and foreseeable deviation from the employer's business became "part of the 'inevitable toll of a lawful enterprise.' " *Id.* at 894 (citation omitted).

{20} Examination of the applicable uniform jury instruction leads to the same result. UJI 13–407 NMRA 1998 states:

**Scope of employment; definition**

An act of an employee is within the scope of employment if:

1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and

2. It was done while the employee was engaged in the employer's business ... and did not arise entirely from some external, independent and personal motive on the part of the employee.

Plaintiff contends that a fact finder could find that she was picking up something personal from her husband's and therefore that she was not doing the Sheriff's Department business at the time of the accident. But the UJI requires that the employee's act arise "entirely" from some personal motive. Given the testimony that Plaintiff was expected to be on duty and responsive to calls while riding in her unit on her way to and from work, we cannot say that a rational fact finder could find that Plaintiff's act was "entirely" personal.

### 4. Application to Facts of This Case

{21} The facts of the *Evans* and *Lazar* cases, in which the issue was decided as a matter of law, are extremely close to this case. Both Defendant and her supervisor at the time of the accident testified that Defendant was considered on duty and doing her employer's business on her way to and from work because she was in her patrol unit, with her radio on, with badge and gun, and ready to respond to calls, which, after all, is the business of the Sheriff's Department. The departmental policy stated the purpose of take-home vehicles was so that investigators could be on call and immediately respond "to any situation anywhere in this County." We need not in this case, and therefore do not, decide whether a line should be drawn at coming and going from work, as the then Sheriff did when he said that such time was on duty. The facts of this case do not involve the more unrestrictive activity of using the car freely on personal business during off-duty or strictly on-call hours.

### D. Standard of Review/Factual Issues

{22} "Generally, whether an employee is acting in the course and scope of employment is a question of fact." *Narney*, 115 N.M. at 48, 846 P.2d at 354. However, "if, from the facts presented, only one reasonable conclusion can be drawn, summary judgment is properly granted." *Id.* at 47, 846 P.2d at 353. We see no reason why these same rules would not apply to the question of scope of duties. Defendant cites *Roberts v. Southwest Community Health*

*Services,* 114 N.M. 248, 252, 837 P.2d 442, 446 (1992), for the proposition that "when a cause of action accrues under a statute of limitations is a judicial determination." Based on this citation, Defendant appears to suggest that the trial court was entitled to find the facts in this case on the issue of scope of duties. We disagree. *Roberts* simply held that the legal formulation for when a cause of action accrues is a judicial determination when the statute does not expressly provide otherwise. *See id.* This is merely another way of saying that statutory construction is a question of law. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). On the other hand, the general rule is that, "[w]here there are disputed questions of material fact as to whether a plaintiff is barred by the statute of limitations, these questions are to be decided by a jury." *Grondahl v. Bulluck,* 318 N.W.2d 240, 243 (Minn.1982); *see Kern v. St. Joseph Hosp., Inc.,* 102 N.M. 452, 456–57, 697 P.2d 135, 139–40 (1985); *Sparks v. Melmar Corp.,* 93 N.M. 201, 203–04, 598 P.2d 1161, 1163–64 (1979).

{23} Were the only testimony in this case that of the Defendant and her supervisor at the time of the accident, this opinion could end here. However, we must acknowledge the presence of three additional factors: (1) a subsequent supervisor did not testify in the same manner as the old supervisor concerning on-duty time being extended into the commute, (2) Defendant herself said in an initial interview that she was off duty because she had left work, and (3) Defendant may have been retrieving something personal at her husband's place of employment. The question is whether these facts would permit a reasonable fact finder to come to a conclusion that Defendant was not within the scope of her duties.

{24} We do not believe so. The accident did not happen during the subsequent Sheriff's term of office. Thus, whatever policies he had would not change the then Sheriff's policy that investigators like Defendant were on duty until they arrived home and called in to the station. That Defendant may have been retrieving something personal would neither alter the fact that she had not yet called in from home nor permit the inference that she was on a substantial deviation from her duties. In other words, her leaving something at her husband's place of employment and returning for it would not be materially different from picking up some groceries in *Lazar* and, more importantly, would not take her out of duties she was authorized or required to perform.

{25} Finally, Defendant's initial interview, in which she opined without reasoned explanation that she was off duty because she had left work, is not sufficient to raise a disputed issue of material fact in this case. Defendant's opinion of whether she was on duty or off duty is not dispositive of the issue of whether she was acting within the scope of her duties, which, as this opinion explains, is subject to a more comprehensive analysis.

{26} Plaintiff argues, based mainly on Defendant's interview statement, that a jury could find that Defendant was off duty, finished with her work for the day, and doing a strictly personal errand at the time of the accident. Plaintiff supports her argument with a policy contention:

> To say that [Defendant] was acting within the scope of her duties as a matter of law, under these facts, is to say that all public employees in a governmental vehicle while on call are covered by the [Tort Claims] Act, regardless of what they are actually doing. If this is the law in New Mexico, taxpayers will be asked to pay the damages for public employees' negligence in countless cases where employees cause injury while on tasks totally unrelated to their employment.

We disagree.

{27} Defendant was a police officer. Part of the duties of police officers is to respond to calls while in their vehicles. The Sheriff's Department policy provided Defendant with a vehicle expressly to facilitate this duty. The policy established a certain degree of control over Defendant's use of the vehicle during these times.

## CONCLUSION

{28} Thus, we affirm the trial court, which did not rule that the mere fact that Defendant was on call or the mere fact that she was driving a government vehicle made her acting within the scope of her duties. The trial court said:

There are several things. The manual specifically permits her to drive the vehicle, permits her to do certain kinds of personal matters in the vehicle.

Also, the rules were that she was on duty until such time as she got home and called in. That was a point that was made. And I don't think it was disputed, that that was a fact. And she was within this time period ... before she actually had gotten home and said, "I am home," and leaving the vehicle, whatever. So it's a combination of several of those things.

{29} On the facts of this case, we cannot disagree with the trial court's rationale. The weight of authority and sound public policy require government to incur the cost of the risks incidental to its activities in maintaining public safety. Defendant's driving of the Sheriff's Department vehicle on her way home from work was just such an activity. The grant of summary judgment for Defendant is affirmed.

{30} **IT IS SO ORDERED.**

HARTZ, C.J. and WECHSLER, J., concur.