Heather SPURLOCK; Sophia Carrasco; Nina Carrera, Plaintiffs–Appellants/Cross–Appellees,

v.

Anthony TOWNES, in his individual capacity, Defendant–Appellee,

and

Barbara Wagner, in her individual capacity; Corrections Corporation of America, Defendants–Appellees/Cross–Appellants.

Nos. 12–2094, 12–2101, 12–2168.

United States Court of Appeals, Tenth Circuit.

Dec. 8, 2014.

Paul J. Kennedy, Esq., Arne Leonard, Esq., Paul Kennedy & Associates, Albuquerque, NM, for Plaintiffs–Appellants/Cross–Appellees.

Michael Steven Jahner, Esq., Yenson, Allen & Wosick, Albuquerque, NM, for Defendant–Appellee.

Nicholas D. Acedo, Daniel Patrick Struck, Struck, Wieneke & Love, PLC, Chandler, AZ, for Defendants–Appellees/Cross–Appellants.

Before GORSUCH and HOLMES, Circuit Judges.

## ORDER CERTIFYING QUESTION TO NEW MEXICO SUPREME COURT *

JEROME A. HOLMES Circuit Judge.

Heather Spurlock, Nina Carrera, and Sophia Carrasco (collectively "Plaintiffs") sued Corrections Corporation of America ("CCA"), Warden Barbara Wagner, and Officer Anthony Townes (collectively "Defendants"), alleging various state tort claims and, pursuant to 42 U.S.C. § 1983, violations of their Eighth Amendment rights, after being sexually assaulted by Officer Townes at a private detention center operated by CCA. A jury found for Plaintiffs on certain claims and Defendants on others. These ensuing cross-appeals have presented, *inter alia,* questions regarding Defendants' obligation to pay the full judgment entered against Officer Townes and Defendants' ability to raise the affirmative defense of comparative fault against Plaintiffs.

Because the disposition of this appeal turns on an important and unsettled question of New Mexico law, we grant Plain-

* This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

tiffs' motion to certify the issue[1] to the New Mexico Supreme Court. Consequently, in accordance with Tenth Circuit Rule 27.1(A) and New Mexico Rule of Appellate Procedure 12-607(A)(1), the United States Court of Appeals for the Tenth Circuit requests that the New Mexico Supreme Court exercise its discretion to accept the following certified question of state law:

> When an inmate is sexually assaulted by a corrections officer, does New Mexico recognize the affirmative defense of comparative fault—permitting the comparison of the correctional facility/employer's alleged negligence with the alleged fault of the inmate victim—for the purpose of reducing the amount of a judgment entered on the inmate's state-law claim of negligent supervision of the tortfeasor-officer by the employer?

## I

Plaintiffs are former inmates of the Camino Nuevo Correctional Center ("Camino"), which is a New Mexico all-female facility privately operated by CCA. In 2007, Officer Townes—who was then employed as a Camino prison guard—sexually assaulted all three Plaintiffs on multiple occasions. Officer Townes subsequently pleaded guilty to several counts of criminal sexual penetration and false imprisonment in New Mexico state court, for which he is presently incarcerated.

In 2010, Plaintiffs filed a lawsuit seeking compensatory and punitive damages in the United States District Court for the District of New Mexico, alleging violations of the Eighth Amendment (via § 1983) and also state tort law pursuant to the New Mexico Tort Claims Act ("NMTCA"). Early in the litigation, the district court granted summary judgment to Plaintiffs as to Officer Townes's liability on their Eighth Amendment § 1983 claims. The district court later granted judgment on the pleadings to Defendants on Plaintiffs' NMTCA claims because those claims were barred by the applicable statute of limitations, but the court granted Plaintiffs leave to amend their complaint to assert "tort claims against the Defendants as private citizens," Aplt.App. at 213 (Order Granting Defs.' Mot. for J. on Pleadings, filed June 23, 2010), which Plaintiffs did.

Defendants then sought summary judgment on Plaintiffs' remaining Eighth Amendment[2] and NMTCA claims. The district court granted Defendants' motion as to all claims, with two exceptions regarding (1) whether Defendants maintained a policy of discouraging inmate complaints of sexual abuse in violation of the Eighth Amendment, and (2) whether CCA and Ms. Wagner negligently super-

1. This order constitutes a partial grant of Plaintiffs' motion to certify. We decline to certify Plaintiffs' first proposed question—concerning whether the judgment entered against Officer Townes constitutes a "liability" imputed to CCA under New Mexico's mandatory financial responsibility statute for private correctional facilities, N.M. Stat. Ann. § 33-1-17—because it is not "sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir.2007). Guided by circuit precedent discouraging the routine invocation of the certification procedure, *see, e.g., Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir.1998), we exercise appropriate restraint and conclude that Plaintiffs' first question is not so difficult as to preclude our ultimate resolution of the appeal. Rather, "we see a reasonably clear and principled course ... [and] will seek to follow it ourselves." *Pino*, 507 F.3d at 1236.

2. Plaintiffs' Eighth Amendment claim against Defendants, at least by the time of trial, was predicated on municipal liability, with CCA as the municipal unit and Ms. Wagner as CCA's policymaker.

vised Officer Townes.[3] As part of its ruling, the district court concluded that Defendants could not be held responsible for Officer Townes's intentional torts under a *respondeat superior* theory of liability because Officer Townes was not acting within the course and scope of his employment when he committed the sexual assaults.

The case proceeded to trial, where the jury was charged with (1) assessing damages on the claims for which Officer Townes had already been deemed liable, and (2) determining liability on the surviving claims. As to the claims involving Officer Townes, the jury awarded each Plaintiff some compensatory damages and $1,000,000 in punitive damages. The jury also found in Ms. Spurlock's and Ms. Carrasco's (but not Ms. Carrera's) favor on the issue of negligent supervision, and in Defendants' favor on Plaintiffs' Eighth Amendment claims.

On a special verdict form, the jury determined that Ms. Spurlock should recover $100,000 from CCA and Ms. Wagner as compensatory damages for their negligent supervision of Officer Townes. It was then instructed to "[s]tate in a percentage how comparatively negligent Defendants CCA and Barbara Wagner were, and how comparatively negligent [Ms.] Spurlock was." *Id.* at 1268 (Special Verdict Form, filed Feb. 16, 2012). Finding Ms. Spurlock fifty-four percent comparatively negligent, the jury reduced her compensatory-damages award to $46,000. The jury likewise awarded Ms. Carrasco $125,000 in compensatory damages and deemed her twenty percent comparatively negligent, thus permitting her to collect $100,000 from CCA and Ms. Wagner.[4]

After several post-trial motions and orders, these consolidated cross-appeals followed.

## II

Certification of a question of a state law can undoubtedly "save time, energy, and resources and help[ ] build a cooperative judicial federalism," *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), and the decision to certify "is within the discretion of [this] federal court," *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988).[5] Nevertheless, because we have no desire to "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks," we will exercise careful "judgment and restraint before certifying." *Pino,* 507 F.3d at 1236. We consider, *inter alia,* "the importance of allowing the [New Mexico] Supreme Court to decide questions of state law and policy, and thus define state law." *State Farm Mut. Auto. Ins. Co. v. Fisher,* 609 F.3d 1051, 1058–59 (10th Cir.2010). And, when we elect to certify a question, we do so to "give meaning and respect to the federal

3. Although Plaintiffs' negligent training and retention theories also survived summary judgment, Plaintiffs voluntarily withdrew those claims at trial.

4. The jury also assessed punitive damages against CCA and Ms. Wagner on these claims: Ms. Spurlock was awarded $5000, and Ms. Carrasco was awarded $50,000.

5. We note that Plaintiffs did not seek certification until a post-trial motion, after the district court had twice ruled against them on this issue. To be sure, "[l]ate requests for certification are rarely granted by this court and are generally disapproved." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency,* 178 F.3d 1363, 1364 (10th Cir.1999). At the same time, however, the "Supreme Court['s] expressed ... preference for certifying questions to a state's supreme court" in sensitive policy areas, *Kan. Judicial Review v. Stout,* 519 F.3d 1107, 1119 (10th Cir.2008), counsels in favor of exercising our discretion to excuse this procedural defect.

character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state ... courts." *Pino,* 507 F.3d at 1236.

Tenth Circuit Rule 27.1(A), which governs the certification of state-law questions, provides that "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) abate the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.1(A); *accord Stout,* 519 F.3d at 1120. We therefore consult the state standard before certifying any legal question, for we appreciate that a receiving court will ultimately judge whether its own certification rules have been satisfied.

As is relevant here, New Mexico's highest tribunal may "answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of [New Mexico]." N.M. Stat. Ann. § 39–7–4; *accord* N.M. R.App. P. 12–607(A)(1). The contents of a certification order from this court must include: "(1) the names and addresses of counsel of record ...; (2) the question of law to be answered; (3) the facts relevant to the question, showing fully the nature of the controversy ...; and (4) a statement acknowledging that the Supreme Court may reformulate the question." N.M. R.App. P. 12–607(C).

Bearing in mind the foregoing criteria, we submit that the question presented above warrants certification.

### A

This case presents an issue of first impression in New Mexico. Plaintiffs contend that New Mexico law precludes comparative fault for negligent-supervision claims against employers, but they have identified no New Mexico cases involving inmate rape victims deemed comparatively negligent for lack of due care. Instead, they urge us to apply the holding of *Medina v. Graham's Cowboys, Inc.,* 113 N.M. 471, 827 P.2d 859 (N.M.Ct.App.1992), a negligent-hiring case involving the extension of *respondeat superior.* On the other hand, arguing for a contrary ruling, Defendants invoke premises-liability theory, which permits the reapportionment of damages based on a plaintiff's comparative fault. In our view, neither set of principles provides the appropriate framework for addressing this sensitive policy issue.

#### 1

In *Medina,* a doorman employed by the bar Graham's Cowboys assaulted the plaintiff in the bar's parking lot. The plaintiff advanced three theories of liability against the bar in his personal-injury lawsuit: (1) the doctrine of *respondeat superior,* because the doorman was allegedly acting within the course and scope of his employment during the assault; (2) the bar's negligent hiring of the doorman; and (3) the bar's failure to provide safe premises for its customers. The trial court rejected the plaintiff's *respondeat superior* strand of reasoning, but found the bar liable under the remaining theories. Because the New Mexico Court of Appeals declined the bar's invitation on appeal to reduce damages by the doctrine of comparative fault, Plaintiffs submit that *Medina* compels the same result here regarding *their* damages awards. We do not so hold.

*Medina* is far from on all fours with the instant case. Its analytical trajectory is unique: first, the court "recognize[d] that the traditional rule of respondeat superior [did] not apply" because the "tort was not committed within the course and scope of

[the doorman's] employment with [the bar], presumably because [his] assault on Medina was not in any way actuated ... by a purpose to serve [the bar]." *Medina,* 827 P.2d at 863 (omission in original) (internal quotation marks omitted). Nonetheless, based on the principles underlying *respondeat superior,* the court "believe[d] that it [was] a *natural extension* of the doctrine of respondeat superior to hold that an employer who is liable for negligently *hiring* an intentional tortfeasor should be vicariously liable for the fault attributed to the tortfeasor—employee." *Id.* (emphases added). The court therefore found it inappropriate to compare the fault of the bar to that of the tortfeasor-employee (i.e., the doorman).

In our view, the foregoing reasoning pertains to a related, but thoroughly *distinct* issue: whether CCA and Ms. Wagner should be liable for the damages caused by Officer Townes's intentional torts if the jury found that CCA and Ms. Wagner negligently supervised him. That question is divorced from the question of whether comparative-fault principles operate to reduce Defendants' liability due to *Plaintiffs'* purported negligence. To answer the latter, Plaintiffs urge us to extend *Medina*'s holding. And they do so without compelling substantiation—*viz.,* they recognize that *Medina* does not provide an explicit answer, but only baldly assert that "[i]f the special relationship and ability to control another person's actions provide the policy grounds for rejecting comparative fault as to employees in this circumstance[ ], as discussed in *Medina,* then those same policy grounds also preclude a comparison of fault with inmates under the employer's control." Cross–Aplt. Opening Br. at 43.

We are not persuaded. Indeed, *Medina,* while not definitively saying so-because it was not directly at issue-could arguably be read to *support* the application of comparative-negligence principles to facts comparable to those here. In this regard, the *Medina* court explained:

> This is not to say that principles of comparative negligence may not still apply in the negligent hiring context. For example, if the victim of the negligently hired employee has also been negligent (say, in exposing himself or herself to the danger), then that fault of plaintiff may reduce the damages for which the negligently hiring employer is liable, even if the employee who committed the intentional tort would still be liable for all the damages. This case, however, does not require us to decide that issue.

827 P.2d at 864. Thus, we are unable to conclude that *Medina*—the sole authority in this setting upon which Plaintiffs hang their fortunes-provides a clear guidepost for rejecting the application of comparative-negligence principles. From where we stand, attempts to divine the principled limits of *Medina*'s holding-relative to the comparative-negligence issue-yield, at best, equivocal results.

Therefore, our analysis returns to the central point: by its terms, *Medina* has nothing to do with the question of a plaintiff's comparative negligence *vel non.* It dealt only with an extension of *respondeat superior* principles, which pertain solely to the relationship between the employer and the employee-tortfeasor. *See, e.g., Romero v. Mervyn's,* 109 N.M. 249, 784 P.2d 992, 997 (N.M.1989) ("Principles of *respondeat superior* apply when the claim is based in tort and the plaintiff alleges the employer is liable for the conduct of an employee because the employee was acting within the scope of employment."). And, although *Medina* enlarged the general doctrine of *respondeat superior,* it did so very slightly. Its holding, as we understand it, is cabined to the relationship be-

tween an employer and employee-tortfeasor. Consequently, *Medina* cannot be said to resolve the issue underlying Plaintiffs' certification motion.

2

Defendants, on the other hand, submit that the New Mexico Supreme Court has resolved the foregoing issue in *their* favor. More specifically, they aver that New Mexico allows for the apportionment of fault between negligent plaintiffs and intentional tortfeasors and that *Barth v. Coleman,* 118 N.M. 1, 878 P.2d 319 (1994), demonstrates that the jury here was entitled to reduce the damages awards for Plaintiffs' purported comparative negligence. We disagree.

In *Barth,* which involved a barroom fistfight between patrons, one of the belligerent patrons sued the bar alleging a breach of the duty to maintain safe premises. The New Mexico Supreme Court not only recognized that the negligent business should only incur liability proportionate to its fault "when [the intentional tortfeasor] was the actual cause of [the plaintiff's] injuries," but also agreed that "[i]f [the plaintiff's] fault contributed to her injuries, the liability of [the negligent business] should be offset by her percentage of fault." *Barth,* 878 P.2d at 322. The court held that the plaintiff's comparative fault should be taken into consideration, quoting language from the following two sources: (1) N.M. Stat. Ann. § 41–3A–1(B) ("[A] defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs...."); and (2) New Mexico's seminal case establishing comparative fault, *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234, 1241–42 (1981), *overruled on other grounds by Herrera v. Quality Pontiac,* 134 N.M. 43, 73 P.3d 181 (2003), which, according to the *Barth* court, "requir[es] that the plaintiff's recovery of total damages be reduced by the percentage of plaintiff's contributing fault," *Barth,* 878 P.2d at 322.

*Barth,* like *Medina,* is not sufficiently on point. Critically, we find it distinguishable because, as Plaintiffs argue, "the relationship between two patrons in a bar is incommensurable with the relationship between a correctional officer and an inmate." Cross–Aplt. Opening Br. at 45. We likewise agree that "[a]n inmate rape victim is not in the same position as a patron who enters a lounge or bar of her own free will ... and can leave whenever she chooses." *Id.* The unique setting of a correctional facility raises several concerns, most saliently with regard to rape-victim bias and the ability of an inmate to consent, especially in light of the allegations in the instant case regarding a facility-wide policy of discouraging inmates from reporting sexual abuse. *Cf.* Vera Bergelson, *Victims and Perpetrators: An Argument for Comparative Liability in Criminal Law,* 8 Buff.Crim. L.Rev. 385, 404–05 (2005) ("In sum, in all instances where (a) there is an identifiable victim (b) capable of giving legally valid consent and (c) *in fact, voluntarily consenting* to a perpetrator's act that infringes on some legally recognized right of the victim, the law, at least partially, takes that consent into account to reduce the perpetrator's liability." (emphasis added)); Ellen M. Bublick, *Citizen No–Duty Rules: Rape Victims and Comparative Fault,* 99 Colum. L.Rev. 1413, 1414–16 (1999) (examining the practice of allowing third parties to assert rape victim comparative-fault defenses and warning of biases against rape victims); *cf. also* Ellen M. Bublick, *Comparative Fault to the Limits,* 56 Vand.

L.Rev. 977, 992 (2003) ("[C]itizens should have no duty to take reasonable care to protect themselves from the threat of rape."). *Barth* may indeed signal that the New Mexico Supreme Court would allow for the application of comparative-fault principles in this instance, but we would prefer that the court expressly so state.

3

We believe that whether an inmate sexual assault victim may contribute to a prison's failure to adequately supervise prison guards—in a situation involving *her own* rape—is not definitively answered by either of the principles (i.e., extension of *Medina* or premises liability) advanced by the parties. New Mexico's comparative-fault doctrine is far from thoroughly settled; it counsels in favor of certification here. And, given the delicate and sensitive policy issues associated with the development of a legal regime to address sexual assaults of prisoners, we decline to undertake a hazardous foray into an area where "we readily admit we lack the expertise of the [state] courts." *Larrieu v. Best Buy Stores, L.P.*, 491 Fed.Appx. 864, 868 (10th Cir.2012).

B

In addition, the answer to the certified question undoubtedly has a determinative impact on this pending appeal: it dictates the amount of compensatory damages Ms. Spurlock and Ms. Carrasco may recover. Clearly, if the application of the comparative-fault doctrine is not permissible in this context, Ms. Spurlock and Ms. Carrasco will be entitled to collect the full complement of compensatory damages on the negligent-supervision claim from CCA and Ms. Wagner. It would require no further effort on our part; the percentages can easily be excised from the judgment given the clear, straightforward nature of the special verdict form. In other words, the form patently answers the amount to which Plaintiffs would be entitled without adjustment based on their alleged percentage of fault. Practically speaking, that would be the end of the matter on this claim.

III

For the reasons stated, this case presents a novel question that is outcome-determinative and stands to impact a significant matter of state legal policy in terms of application of the comparative-fault doctrine. Therefore, "[i]n furtherance of the interests of comity and federalism that certification protects," *Howard v. Zimmer, Inc.*, 711 F.3d 1148, 1152–53 (10th Cir. 2012) (quoting *Garza v. Burnett*, 672 F.3d 1217, 1221–22 (10th Cir.2012)) (internal quotation marks omitted), and in accordance with Tenth Circuit Rule 27.1(A) and New Mexico Rule of Appellate Procedure 12–607(A)(1), we hereby **certify** the following question to the New Mexico Supreme Court:

> When an inmate is sexually assaulted by a corrections officer, does New Mexico recognize the affirmative defense of comparative fault—permitting the comparison of the correctional facility/employer's alleged negligence with the alleged fault of the inmate victim—for the purpose of reducing the amount of a judgment entered on the inmate's state-law claim of negligent supervision of the tortfeasor-officer by the employer?

Our phrasing of this question is not intended to limit the New Mexico Supreme Court's scope of inquiry. Rather, we acknowledge that the court may reformulate our question, and we invite the court to do so in any way it finds helpful.

Finally, as required by New Mexico Rule of Appellate Procedure 12607(C)(1),

we include the following information regarding the names and addresses of counsel of record:

On behalf of Plaintiffs:

Paul J. Kennedy & Arne Leonard
Paul Kennedy & Associates
201 12th Street N.W.
Albuquerque, NM 87102

On behalf of Officer Townes:

Michael Steven Jahner
Yenson, Allen & Wosick, P.C.
4908 Alameda Boulevard, NE
Albuquerque, NM 87113

And, on behalf of CCA and Ms. Wagner:

Nicholas D. Acedo & Daniel Patrick Struck
Struck, Wieneke & Love, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226

The Clerk of the Tenth Circuit Court of Appeals shall transmit a copy of this certification order to counsel for all parties. The Clerk shall also submit to the Clerk of the New Mexico Supreme Court a copy of this order, along with copies of the briefs filed in this court, and either the original or a copy of the record as filed in this court by the Clerk of the United States District Court for the District of New Mexico.

We sincerely appreciate the New Mexico Supreme Court's consideration of this request. This appeal is ordered **ABATED** pending resolution of the certified question of state law.