773 A.2d 116 (2001)
339 N.J. Super. 581
Veronica ROGERS, Plaintiff-Respondent,
v.
Keith B. JORDAN, Newark Police Department, PSE & G, County of Essex, State of New Jersey Commissioner of Insurance, Unsatisfied Claim and Judgment Fund Board, Utica National Insurance Group, et al, Defendants,
City of Newark, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 2001.
Decided May 1, 2001.
*117 John C. Pidgeon, First Assistant Corporation Counsel, argued the cause for appellant (Michelle Hollar Gregory, Corporation Counsel; Shay Deshpande, Assistant Corporation Counsel, and Stephanie A. Lane, Assistant Corporation Counsel, on the brief).
Cynthia M. Maurer argued the cause for respondent (Jacoby & Meyers, Newark, attorneys; Ms. Maurer, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
*118 The opinion of the court was delivered by LINTNER, J.A.D.
In this appeal we are asked to resolve whether defendant, City of Newark (the City), is vicariously liable under the doctrine of respondeat superior for a police officer's negligent operation of a personal automobile while in uniform and traveling home on lunch break. The motion judge denied the City's motion for partial summary judgment finding that defendant, Officer Keith B. Jordan, was operating his vehicle within the scope of his employment based upon the Newark Police Department's (the Department) Rules and Regulations, which specified that an officer remains on duty even when periodically relieved during his regularly scheduled day. The City appeals. We hold that, under the circumstances of this case, Officer Jordan was not within the scope of his employment at the time of the accident, and reverse.
We combine the relevant facts, which are undisputed, with the procedural history. On August 26, 1995, at approximately 8:47 p.m., defendant, Officer Keith Jordan, was operating his personal [private passenger vehicle] car when he struck and seriously injured a pedestrian, plaintiff, Veronica Rogers. At the time, Jordan was in uniform, on paid lunch break and traveling home to attend to his son who was ill. He was working the 3:00 p.m. to 11:00 p.m. shift, assigned to the Department's Communications Division, where he was responsible for dispatching assignments and transmitting official orders to radioequipped vehicles.
The Department's Manual of Rules and Regulations (Manual), which "defines the lines of authority, requisite duties, and code of conduct" for all police personnel, provides in pertinent part:
2:3.16 Duty. The embodiment of the requirements of the police calling that a police officer must fulfill by reason of the (sworn) oath of office he has taken.
....
2:3.24 Off Duty. The duty status of a member of the Department during authorized leave when he is free from the responsibility of performing his specified routine duties.
....
2:3.27 On Duty. The duty status of a member of the Department when he is actively engaged in the performance of his assigned duties during designated hours of the day.
....
2:3.43 Tour of Duty. A designated space of time within a 24 hour period during which members of the Department are actively engaged in the performance of their assign duties.
....
3:2.1 Duty Requirements. Police officers shall be always subject to duty even when periodically relieved from regularly scheduled duty.
On April 22, 1997, plaintiff filed a complaint naming Jordan, the City and the Department, among others who are not involved in this appeal, as defendants.[1] The complaint sought damages for personal injuries against Jordan based upon negligent operation of his vehicle. The complaint also asserted liability against the *119 City predicated upon respondeat superior and negligent hiring. On March 3, 1999, plaintiff filed a motion seeking an order (1) finding Jordan to be on duty at the time of the accident and (2) granting summary judgment against the City on the issue of negligent hiring. The City filed opposition and a cross motion for partial summary judgment seeking to dismiss plaintiff's claims that the City was vicariously liable for Jordan's negligent conduct. The motion judge found, as a matter of law, that Jordan was within the scope and course of his employment at the time of the accident. He also determined that although plaintiff had established sufficient facts to present a prima facie case of negligent hiring, a jury question remained. An order reflecting the motion judge's findings was entered on June 2, 1999. The City's motion for reconsideration was denied by order of August 9, 1999, and we denied leave to appeal on October 6 1999.
Trial was scheduled before a different judge who found the June 2 order to be the law of the case. Following a six-day jury trial, a verdict was returned finding Jordan fifty-one percent negligent and plaintiff forty-nine percent negligent. Plaintiff's motion for new trial and alternative additur was denied. This appeal followed and is limited to the City's contention that the motion judge erred in finding that Jordan was acting within the scope of his employment at the time of the accident.
We begin our analysis with the New Jersey Tort Claims Act. N.J.S.A. 59:2-2a. provides:
A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.
The Tort Claims Act, therefore, does not afford a public entity any specialized immunity when determining whether it is vicariously liable for the acts of its employees. Generally, the doctrine of respondeat superior renders an employer vicariously liable for the tortious conduct of its employee only when the employee acts within the scope of employment. Gilborges v. Wallace, 78 N.J. 342, 351, 396 A.2d 338 (1978). Our Supreme Court has turned to the Restatement when the issue is whether an employee has acted within the scope of his or her employment. DiCosala v. Kay, 91 N.J. 159, 169, 450 A.2d 508 (1982). The Restatement (Second) of Agency section 228 (1957) provides the following definition of scope of employment.
(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
....
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
Comment c., Acts of a personal nature, of section 229 provides the following:
Although the servant is authorized to act, the master is not liable for his conduct unless the servant is in fact acting in the employment and for his master's purpose.... [S]uch personal matters as eating and cleaning of the person may be so much a part of the work and under such control that it is part of the employment. This is true if the master assumes control over the general conduct of the servant during such period. If, however, such acts are for the personal *120 convenience of the employees and are merely permitted by the master in order to make the employment more desirable, the acts are not within the scope of employment.
[Restatement (second) of Agency section 229, comment c.]
Consideration of whether an employee is within the scope of employment necessarily requires us to examine any special rules and regulations imposed by the employer embracing the duties that an employee is requested or required to perform. Medina v. Fuller, 126 N.M. 460, 971 P.2d 851, 854 (App.1998). Jordan's duty requirements necessitates him to be "always subject to duty even when periodically relieved from regularly scheduled duty." Accordingly, Jordan was "subject to duty" during his lunch break, even though he was temporarily relieved from his assignment as a communications officer. (Manual3:2.1 Duty Requirements) Pursuant to section 2:3.27, Jordan was deemed "on duty" when he was "actively engaged in the performance of his assigned duties during designated hours of the day." Correspondingly, the "off duty" provisions consider Jordan to be off duty when he is on "authorized leave when he is free from the responsibility of performing his specified routine duties." (Manual 2:3.24 Off Duty) These three sections of the City Rules and Regulations are complementary and consistent with each other. When applied to the factual circumstances under consideration, it is clear that Jordan, though subject to duty during his lunch break, was in fact off duty as he was on an authorized leave and free from his specified duties as a communications officer. His "subject to duty" status would consider him to be on duty if, during his lunch hour he encountered circumstances calling for him to act as a police officer. Thus, if while traveling home he witnessed the occurrence of a crime, causing him to pursue a perpetrator and resulting in an accident with a third person, he would be considered subject to duty and within the scope of his employment.
Plaintiff relies heavily on the deposition of retired Sergeant Ronald Pisano in support of her contention that the Department Rules and Regulations stand for the proposition that an officer is considered on duty during lunch break. Pisano's testimony, however, is inapposite. The relevant deposition testimony is as follows:
Q: What does the term on duty mean?
....
A: That's a bit of a gray area here. A police officer is supposedly on duty 24 hours a day. He caries his revolver 24 hours a day, has police powers 24 hours a day. Officially, working for the City of Newark or on clock, on shift, yes, I would say when you are on lunch you are on duty.
....
Q: So, when you say a police officer is on duty 24 hours a day, does that mean from the minute he gets his badge when he graduates police school to the time he retires he's on duty?
A: Yes
(Objection interposed)
Q: This is to your knowledge? The answer that you just gave is to your knowledge?
A: Yes. If a police officer is off duty, supposedly, and sees a crime going down and does not act, he can he held accountable for not acting. He is dutybound to act, so whether he's off duty or on duty.
....
Q: Can you point me to anything in particular that states that?
*121 A: No, not right off the top of my head. If a police officer right now sees a crime going down and he's off duty; not working, and he intervenes, and he arrest a suspect ... the City ... will start paying him as soon as he intervenes. He officially becomes on duty or he starts getting paid for taking that police action.
Pisano's testimony is consistent with our analysis of the duty requirements, off duty and on duty regulations.
The fact that an officer is subject to duty if a crime is witnessed does not mean that he or she is on duty while performing an act of a purely personal nature. The resolution of the issue turns upon what the employee was doing at the time the injury-producing accident occurred. Medina, supra, 971 P.2d at 855. While a search of cases does not reveal any directly on point, there are a few with similar facts in other jurisdictions. Ehlenfield v. State, 62 A.D.2d 1151, 404 N.Y.S.2d 175, 177, appeal denied, 44 N.Y.2d 649, 408 N.Y.S.2d 1023, 380 N.E.2d 336 (1978) (oncall police officer not considered in the scope of employment as a matter of law when he was transporting a refrigerator to the station in his own personal vehicle on his own time); Henriksen v. City of Rialto, 20 Cal.App. 4th 1612, 25 Cal.Rptr.2d 308, 310, 312-313 (1993) (summary judgment in favor of the employer affirmed where a friend of an off-duty police officer brought suit, seeking compensation for injuries sustained when officer's pistol accidentally discharged during off-hour socialization at the friend's house); Medina, supra, 971 P.2d 851 (sheriff considered to be within the scope of her duties when she was involved in an accident while on her way home from work in her official vehicle, wearing her uniform because she was permitted to keep her official vehicle at home and was considered to be on patrol while coming and going to work.)
Plaintiff urges us to apply the ruling in Jasaitis v. City of Paterson, 31 N.J. 81, 155 A.2d 260 (1959), which held that a uniformed police officer, who was injured while on his way home from work, was entitled to workers' compensation benefits because the injury was considered arising out of, and in the course of, his employment. The Legislature subsequently amended N.J.S.A. 34:15-36, limiting the exceptions to the going and coming rule and precluded eligibility for compensation to policemen, firemen, and members of first aid or rescue squads when traveling to and from work, unless in the process of responding or returning from an emergency. See Plodzien v. Township of Edison Police Dep't., 228 N.J.Super. 129, 549 A.2d 59 (App.Div.1988). Plaintiff argues that, because a similar provision is not contained in the Tort Claims Act, the holding in Jasaitis should be applied here. Again, we disagree.
Although the limitation on the scope of employment and corresponding relief to employers from the exceptions to the going and coming rule in the workers' compensation setting would be consistent with the views we have expressed here, we have refused to equate the tort concept of "scope of employment" with the requirements of workers' compensation that the injury "arise out of and in the course of" one's employment. Mannes v. Healey, 306 N.J.Super. 351, 356-357, 703 A.2d 944 (App.Div.1997). We have recognized that cases embracing the Workers' Compensation Act do not govern scope of employment for the purposes of establishing vicarious liability under the doctrine of respondeat superior. See Id. at 357, 703 A.2d 944, (citing Government Employees Ins. Co. v. United States, 678 F.Supp. 454, 456 (D.N.J.1988)). Here, *122 the undisputed facts lead us to the inescapable conclusion that, at the time of the accident, Officer Jordan was on his way home during lunch break for a purely personal purpose and, therefore, his actions were neither the type he was employed to perform nor actuated by a purpose to serve his employer. When considered in light of the provisions in sections 228 and 229 of the Restatement (second) of Agency, there was no material issue of fact concerning Jordan's status at the time of the happening of the accident. He was not within the scope of his employment as a police officer for the City. The City was entitled to summary judgment on the issue of its vicarious respondeat superior liability. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Accordingly, we reverse.
NOTES
[1] For the purpose of this appeal, although named as individual defendants, the City and Department are considered one defendant and referred to as "the City." The Unsatisfied Claim and Judgment Fund along with the Commissioner of Insurance were named as additional defendants. Both were subsequently successful in obtaining an order for summary judgment dismissing plaintiff's complaint. Plaintiff does not appeal that order.