**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0591-16T3

LUIS RODRIGUEZ,

    Plaintiff-Appellant,

v.

CHARLES J. ZEIGLER, JUANITA
ZEIGLER, COUNTY OF CAMDEN,
CITY OF CAMDEN POLICE
DEPARTMENT, COUNTY OF CAMDEN
POLICE DEPARTMENT, CAMDEN
COUNTY PROSECUTOR'S OFFICE and
STATE OF NEW JERSEY,

    Defendants,

and

CITY OF CAMDEN,

    Defendant-Respondent.

_____

        Submitted June 4, 2018 — Decided June 27, 2018

        Before Judges Whipple and Rose.

        On appeal from Superior Court of New Jersey,
        Law Division, Camden County, Docket No.
        L-0631-15.

        Gregory C. Dibsie, attorney for appellant.

        Marc A. Riondino, City Attorney, attorney for
        respondent City of Camden (Timothy J.

Galanaugh, Assistant City Attorney, of counsel
and on the brief).

PER CURIAM

Plaintiff Luis Rodriguez appeals from an August 26, 2016 summary judgment dismissal of his personal injury complaint against defendant City of Camden seeking damages arising out of a shooting at a Camden police officer's residence.[1] We affirm.

We discern the pertinent facts from the summary judgment record, extending to plaintiff all favorable inferences. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). At the time of the shooting, plaintiff was a home health aide for L.D.M,[2] an autistic young adult, who lived directly across the street from Camden Police Officer Charles J. Zeigler.

Around 3:00 p.m. on February 22, 2013, plaintiff met L.D.M. at the school bus stop near his home. L.D.M. exited the bus and ran toward Zeigler's residence, with plaintiff in pursuit. Zeigler was home, cleaning the second-floor bathroom, when he heard kicking

_____

[1] Plaintiff's complaint also included as defendants: the officer and his wife, the County of Camden, the City of Camden Police Department, the County of Camden Police Department, the Camden County Prosecutor's Office, and the State of New Jersey. Plaintiff settled his claims with the officer and his wife; the governmental entities were either dismissed via motion or stipulation.

[2] Although L.D.M.'s age is unclear from the record, we use initials to protect his confidentiality.

A-0591-16T3

and banging at his front door. Fearing a home invasion, Zeigler retrieved his police service weapon and approached the front door. Zeigler claims he "heard two popping sounds which [he] believed to be gunshots." When the banging ceased, Zeigler attempted to open the door slowly, but it was pushed toward him, causing his weapon to discharge two bullets. One bullet struck plaintiff's chest; the other hit L.D.M.'s bicep.

Following the shooting, Zeigler called 9-1-1, stating ". . . this is Officer Zeigler, I need a police officer and an ambulance [at his address]." When asked whether he was working, Zeigler responded "No. I'm off duty." Zeigler then called the Fraternal Order of Police ("FOP") president, advising him of the shooting.

Plaintiff's complaint included respondeat superior claims against the City for negligent supervision of Zeigler, who plaintiff claims was acting within the scope of his employment as a police officer. Plaintiff also alleged the City failed to properly train Zeigler in handling his service weapon. After the discovery period closed, without any discovery having been conducted, the City filed its motion for summary judgment.

In a succinct oral decision, followed by an order entered on August 26, 2016, the Law Division judge determined plaintiff failed to demonstrate Zeigler was on duty at the time of the shooting. In particular, the judge found "He [i]s at his private home. He

is not in uniform. . . . Clearly his actions are something of a personal nature."  The judge also found plaintiff did not produce in discovery an expert report supporting his theory that Ziegler mishandled his service weapon, and that this error should be imputed to the City.  Based on these findings, the judge entered summary judgment in favor of the City.  This appeal followed.

In considering plaintiff's appeal from the grant of summary judgment, we employ the same standard as the motion judge pursuant to <u>Rule</u> 4:46-2(c) (stating summary judgment should be granted only if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law").  <u>See also</u> <u>Henry v. N.J. Dep't of Human Servs.</u>, 204 N.J. 320, 330 (2010).  We owe no deference to the motion judge's conclusions on issues of law. <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Initially, we consider plaintiff's argument that Zeigler was on duty at the time of the shooting because he was investigating what he perceived to be a home invasion.  "Under respondeat superior, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment."  <u>Carter v. Reynolds</u>, 175 N.J. 402, 408-09

(2003) (citation omitted).  The Tort Claims Act "incorporat[es] the doctrine of respondeat superior" in N.J.S.A. 59:2-2(a). Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 409 (1988); N.J.S.A. 59:2-2(a) ("A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances").

In determining whether a public employee is acting within the scope of employment, our courts apply common law principles of vicarious liability.  See Rogers v. Jordan, 339 N.J. Super. 581, 586 (App. Div. 2001).  In particular, the Court has followed the Restatement (Second) of Agency, observing "an employee's conduct falls within the scope of employment if:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits; [and]
>
> (c) it is actuated, at least in part, by a purpose to serve the master[. . . .]
>
> [Carter, 175 N.J. at 411 (quoting Restatement (Second) of Agency § 228 (Am. Law Inst. (1958)).]

Here, although Zeigler approached the door armed with his service weapon, he was off-duty, not in uniform, and in his residence at the time of the shooting.  Indeed, he was cleaning

his home when the incident occurred. His actions were not "actuated . . . by a purpose to serve [the City]." Rather, his actions were self-serving, i.e., to protect his home. Although Zeigler fired his department-issued service weapon, identified himself as an officer when he called dispatch, and notified his FOP president following the shooting, these actions do not create respondeat superior liability for the City.

Moreover, plaintiff's reliance on our decision in Rogers v. Jordan, 339 N.J. Super. 581 (App. Div. 2001), is misplaced. In Rogers we reversed a trial court's determination that an officer was acting in the scope of his employment when his vehicle struck and injured a pedestrian while he was driving home during a lunch break, because he was on "authorized leave." Id. at 587. Plaintiff relies on our observation that "if while traveling home [the officer] witnessed the occurrence of a crime, causing him to pursue a perpetrator and resulting in an accident with a third person, he would be considered subject to duty and within the scope of his employment." Ibid. We further found, however,

> The fact that an officer is subject to a duty if a crime is witnessed does not mean that he or she is on duty while performing an act of a purely personal nature. The resolution of the issue turns upon what the employee was doing at the time the injury-producing accident occurred.
> [Id. at 588 (citation omitted)]

A-0591-16T3

Simply put, Zeigler was not serving the City when he discharged his weapon, injuring plaintiff. As we have observed, he was off-duty, cleaning his home immediately prior to the incident, and protecting himself and his home during the shooting. We, therefore, agree with the trial judge that Zeigler's actions were "of a purely personal nature." See e.g., State v. Hupka, 203 N.J. 222, 239 (2010) (recognizing that a sexual assault offense committed by an officer "in a private home involving someone defendant knew, as opposed to a member of the public, . . . held no nexus to his position in law enforcement" (citation omitted)).

Because we find Zeigler was not on duty when the shooting occurred, we need not address his argument that the trial judge erred in ruling expert opinion was necessary to establish the City's liability in failing to properly train Zeigler in the operation of his service weapon. We do so, briefly, for the sake of completeness.

The elements of a negligence cause of action are well-settled. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty of Essex, 196 N.J. 569, 584 (2008)). Where, however, a jury lacks the competence to supply the applicable standard of care, the plaintiff must

"establish the requisite standard" and the defendant's deviation from it by "present[ing] reliable expert testimony on the subject." Davis, 219 N.J. at 407 (alteration in original) (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 42 (App. Div. 1999)). In determining whether expert testimony is required, "a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Ibid. (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)).

Here, plaintiff contends Zeigler's service weapon could not have discharged accidentally twice, but if it did, the discharge was a result of Zeigler's improper training by the City. The motion judge dismissed plaintiff's argument for lack of support with expert opinion. We agree that police training is not within the ken of the average juror. See N.J.R.E. 701; see also State v. McLean, 205 N.J. 438, 459 (2011) (citing Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)). Plaintiff failed to name an expert witness to demonstrate a nexus between the weapon discharging twice and the City's alleged improper training of Zeigler.

We likewise reject plaintiff's improper reliance on a "Smith & Wesson Safety & Instruction Manual" to support his theory that

Zeigler's weapon could not discharge accidentally more than once. The manual was not produced in discovery, and the function and use of a firearm is beyond the ken of the average juror. See Davis 219 N.J. at 407. Even affording plaintiff, as we must, all reasonable inferences from the factual record, there is an insufficient evidential basis here to conclude that the City acted unreasonably, without the aid of expert testimony, to establish that an accepted standard of care was violated.

In sum, we find no genuine issue as to any material fact. We conclude, as did the motion judge, that the City is entitled to judgment as a matter of law. Plaintiff's remaining arguments, to the extent we have not specifically addressed them, are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0591-16T3