The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: <u>May 29, 2024</u>

**No. A-1-CA-40776**

**REBEKAH WRIGHT, Personal**
**Representative of the ESTATE OF**
**BILLY R. WEINMAN, Deceased;**
**KARL BAUMGARTNER; and**
**SAMANTHA BAUMGARTNER,**

     Plaintiffs-Appellees,

v.

**SEVENTH JUDICIAL DISTRICT COURT**
**OF NEW MEXICO,**

     Defendant-Appellant,

and

**SHANNON MURDOCK,**

     Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Court Judge**

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

The Davis Law Group, LLC
Frank T. Davis, Jr.
Albuquerque, NM

for the Estate of Billy Weinman

Blazejewski & Hansen, LLC
Eva K. Blazejewski
Heather K. Hansen
Albuquerque, NM

for Appellees Karl & Samantha Baumgartner

Robles, Rael & Anaya, P.C.
Taylor S. Rahn
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}     This appeal arises from a tragic highway accident involving a sitting judge and two bicyclists, one of whom was killed and the other severely injured upon being struck by the judge's vehicle as she returned home from a Saturday event (the Event), where she was invited to provide remarks to successful participants in an adult drug treatment program. At issue is whether the judge, who stipulated to liability and is not a party to this appeal, was acting within the scope of her official duties on her drive home from the Event such that the Seventh Judicial District Court (SJDC), her employer, is vicariously liable for the judge's negligence under the New Mexico Tort Claims Act (TCA or the Act), NMSA 1978, §§ 41-4-1 to -27 (1976, as amended through 2020). The district court concluded there to be a sufficient nexus between the judge's attendance at the Event and the judge's judicial responsibilities such that she was acting within the scope of her official duties for purposes of the Act. The SJDC appeals from that determination. We affirm.

**BACKGROUND**

{2}     The relevant facts are undisputed. SJDC Judge Shannon Murdock was at the time of the accident in question, and remains, an elected and actively presiding district judge within the SJDC. She resides in Moriarty, a city within Torrance County, New Mexico, and performs most of her judicial duties in the district

courthouse in Estancia, also within Torrance County. As part of those duties, Judge Murdock presides over cases in the Torrance County Drug Court. The SJDC covers a large geographic area encompassing both Torrance and Socorro Counties, the latter being the location of the Event and the former the location of the accident giving rise to this case.

{3}     On the morning of Saturday, September 21, 2019, Judge Murdock left her home in Moriarty bound for Socorro in her personally owned vehicle. Judge Murdock had been asked and agreed to provide introductory remarks at the Event, which was sponsored and organized by Socorro County d/b/a Socorro County Community Alternatives Substance Abuse Treatment Program (SCCAP), a private contractor working with the SJDC that provides a variety of pretrial services for the court including treatments related to the SJDC's Adult Drug Court Treatment Program. The Event was intended to celebrate the progress of individuals participating in the program and their recovery from drug addiction. Event organizers hoped that, given her position and title, Judge Murdock's words and presence would promote the legitimacy of the Event and the SCCAP generally. Indeed, Judge Murdock was introduced at the Event as a district court judge within the SJDC who runs her own drug court in Torrance County.

{4}     After Judge Murdock gave her remarks and the Event concluded, she began her one-and-a-half hour drive home to Moriarty. At approximately one o'clock in

2

the afternoon, Judge Murdock's vehicle collided with Billy Weinman and Karl Baumgartner, who were cycling along the edge of U.S. Highway 60 near Mountainair. Weinman died at the scene; Baumgartner suffered severe injuries and had to be airlifted to a hospital in Albuquerque, New Mexico.

{5}     Weinman's estate and Baumgartner (collectively, Plaintiffs) subsequently filed suit under the TCA against Judge Murdock and her employer, the SJDC, seeking damages for, among other things, personal injury and wrongful death. Central to the issues before the district court and these on appeal, Plaintiffs sought to establish that Judge Murdock was acting within the scope of her official duties under the TCA such that the SJDC is vicariously liable for the harms caused in the accident. Both Plaintiffs and the SJDC filed cross-motions for partial summary judgment on this issue. After several hearings, the district court concluded there to be no genuine issue of material fact regarding the circumstances or nature of Judge Murdock's attendance at the Event and ruled that, as a matter of law, she was acting within the scope of her official duties as a judge in the SJDC at the time her vehicle struck the cyclists. It continued that the SJDC, therefore, is vicariously liable under the TCA for the injuries Judge Murdock caused during the accident. The SJDC appeals.

## DISCUSSION

{6}     On appeal, the SJDC argues that the district court erred in concluding Judge Murdock was acting within the scope of her official duties while at the Event in Socorro because, in its view, Judge Murdock's attendance there was "extrajudicial activity"—i.e., not part of her job as a judge—permitted by the Code of Judicial Conduct but not a duty of judicial office. *See* Rule 21-301 NMRA comm. cmt. 1 (explaining circumstances in which judges are encouraged to engage in extrajudicial conduct). The SJDC relies on the facts that Judge Murdock attended the Event voluntarily and that no one within the SJDC requested, required or authorized her to go; Judge Murdock did not use her court-issued vehicle to travel to the Event; and she did not seek reimbursement for expenses incurred as a result of the trip (although she could have)—facts that, according to the SJDC, prove Judge Murdock's attendance at the Event was afield of the official duties of judicial office.

{7}     The SJDC further argues that, even were Judge Murdock acting within the scope of her duties *during* the Event, she was not doing so when she traveled to and from it. In this regard, the SJDC relies on many of the same facts as those stated above: Judge Murdock used her personal, rather than official, vehicle to travel to, and return from, the Event; she did not seek reimbursement for the trip; and no one in a supervisory position within the SJDC even knew she was going to the Event. The SJDC also points out that the Event was on a Saturday, not during normal

4

working hours, and that Judge Murdock was not traveling to and from the courthouse in Estancia where she normally works.

**Standard of Review**

{8}     "We review the grant of summary judgment de novo and construe reasonable inferences from the record in favor of the party opposing the motion." *Celaya v. Hall*, 2004-NMSC-005, ¶ 7, 135 N.M. 115, 85 P.3d 239. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). The district court's grant of summary judgment in this case is based on its interpretation of provisions of the TCA and this appeal requires us to interpret the same. Such interpretation presents an issue of statutory construction, which we also review de novo. *See Rutherford v. Chaves County*, 2003-NMSC-010, ¶ 8, 133 N.M. 756, 69 P.3d 1199.

**Scope of Duty Under the TCA**

{9}     The parameters of a judge's scope of duty within the meaning of the TCA have not been defined by New Mexico appellate courts. We must therefore undertake this analysis as to the facts of this case, guided primarily by principles of jurisprudence we glean from relevant authority.

{10}     To begin, the TCA provides governmental entities and public employees with general immunity from liability for any tort caused while they are acting in their official capacity, subject to certain exceptions. Section 41-4-4(A). One such exception, pertinent here, is for damages resulting from injury or wrongful death caused by the negligence of public employees "while acting within the scope of their duties in the operation or maintenance of any motor vehicle." Section 41-4-5. The TCA defines "scope of duty" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." Section 41-4-3(G). Determining whether a public employee is acting within the scope of their duties is a fact-based inquiry that must be decided on a case-by-case basis. *See Celaya*, 2004-NMSC-005, ¶ 28 ("Whether an employee is acting within the scope of duties is a question of fact."). Nonetheless, summary judgment may still be properly granted "if, from the facts presented, only one reasonable conclusion can be drawn." *Medina v. Fuller*, 1999-NMCA-011, ¶ 22, 126 N.M. 460, 971 P.2d 851 (internal quotation marks and citation omitted). Particularly as it pertains to judges—who retain their title while acting in their personal as well as their professional capacities—a scope of duty analysis depends largely on the facts before the court. Our appellate courts have provided the rough contours of this factual analysis through our case law, to which we now turn.

{11} There are three seminal cases in New Mexico instructive to our inquiry regarding scope of duty under the TCA: *Celaya*, 2004-NMSC-005, *Risk Management Division v. McBrayer*, 2000-NMCA-104, 129 N.M. 778, 14 P.3d 43, and *Medina*, 1999-NMCA-011. *Celaya*, issued twenty years ago yet nonetheless the most recent, summarizes the other two cases and provides the following guideposts for our determination. First, for a public employee to act within their scope of duties, there must be a sufficient nexus between the duties requested, required or authorized by the employer and the employee's conduct at the time the tort occurs. *See* 2004-NMSC-005, ¶ 26. This requirement is consistent with the standard set forth in the TCA's applicable exception from governmental entity immunity. *Celaya* clarifies that the required nexus cannot be merely incidental, such as the employee simply being on-call, without more, or driving a government vehicle for a purely personal purpose. *See id.* ¶¶ 26-27. Rather, a sufficient relationship between duty and tort may be established if the employee, at the time of causing injury, is providing some benefit to the public body or is otherwise facilitating its functioning or furthering its goals. *See id.* ¶¶ 23, 26. The courts may further look to the public body's relevant practices regarding the employee, its policies or guidelines, or other authority in law governing the public body or its employees that might offer insight into whether the conduct underlying the tortious incident was requested, required or authorized by the employer. *See id.* ¶ 3 (explaining specific practices the public body used

7

regarding the employee-tortfeasor's employment); *McBrayer*, 2000-NMCA-104, ¶ 27 (discussing the public body's relevant policies); *Medina*, 1999-NMCA-011, ¶ 11 (referencing statutes, which define a police officer's duties).

{12}    In its methodically explained written order, the district court determined there to be a sufficient nexus, established by undisputed facts, between Judge Murdock's purpose for attending the Event, the nature of the Event itself, and the SJDC's drug court initiatives and its contractual relationship with the SCCAP in furtherance thereof, to establish as a matter of law that Judge Murdock was acting within the scope of her duties at the time of the accident. We agree with this determination and explain.

**The Event Was Within the Scope of Judge Murdock's Duties**

{13}    The Event was an annual celebration of people involved in the SJDC's Socorro-based drug treatment program and their progress recovering from drug addiction. Although the SCCAP only provides services to the Socorro branch of the SJDC, and not the branch in Estancia where Judge Murdock presides, Judge Murdock was asked to provide remarks specifically because her title would lend validation to the Event and the SCCAP. The policy of the SJDC, as evidenced by its contract with the SCCAP, identifies, in part, the following goals: (1) to reduce substance abuse by adults; (2) to promote public safety and protect due process rights of adults in its program; (3) to promote the educational and vocational advancements

8

of persons within the SCCAP; and (4) to address the social and economic needs of such persons and their families. Indeed, in furtherance of these goals, Judge Murdock herself has referred litigants in Estancia to the SCCAP for treatment.

{14}    We first address the SJDC's argument that Judge Murdock—an elected official—answers to no person within the court, and as such, no one within the SJDC "requested, required or authorized" her to attend the Event as required by the TCA's exception to governmental entity immunity. *See* § 41-4-3(G); *Celaya*, 2004-NMSC-005, ¶ 22. Indeed, it is not clear from the record that either the chief judge of the SJDC at the time or the SJDC's executive officer knew Judge Murdock was going to the Event. While it is generally true that judges in New Mexico, being elected, are not supervised by any specific person regarding the execution of their judicial duties, such a fact does not singularly resolve whether a particular act falls within the TCA's ambit. Indeed, if only those acts done at the direct behest of a superior official satisfy Section 41-4-3(G), and are thereby potentially excepted under Section 41-4-5 from the TCA's general provision of immunity to governmental entities, judges would have few demonstrably official duties. Such a narrow interpretation of Section 41-4-3(G) is unsupported by both the reality of the many requirements of judicial office with which judges are obligated or authorized to comply and the text of the statute itself, which makes no mention of any need for direction or supervision by a specific superior. *See* § 41-4-3(G); *Celaya*, 2004-NMSC-005, ¶ 26. Moreover, we will not

interpret a statutory provision specifically designed to waive sovereign immunity in the factually precise circumstance presented here to impliedly exempt elected public officials—who often occupy the highest positions of government—simply because they have no direct supervisor. *See Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320 ("A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." (internal quotation marks and citations omitted)).

{15} We pause to note that judicial autonomy, while certainly a central component of the elected or appointed position, is not absolute. For example, judges do not assign themselves their own cases; rather, cases are assigned by processes adopted by a given court or judicial district. Still, the core judicial duty of resolving these cases is performed as the jurist sees fit, so long as the judge's approach is in accordance with the New Mexico Rules of Criminal and Civil Procedures and applicable jurisprudence. The judge's performance is subject to review and oversight by the Code of Judicial Conduct, the Judicial Performance Evaluation Commission, the Judicial Standards Commission, our Supreme Court in its constitutional supervisory role over the New Mexico judiciary, and the electorate itself. But such mechanisms of oversight are mostly general, and not specific, relating to such things as time limitations, permitted or disallowed conduct by the judge, or overall judicial performance, and do not control day-to-day or case-by-case responsibilities. It bears

10

repeating that, as to Judge Murdock, no individual person within the SJDC acts as her supervisor, dictates her actions, or otherwise controls her conduct as a judge.

{16} Suffice it to say, judges—like other statewide or local elected officials, but unlike most other classified or unclassified state employees—are salaried employees of larger institutions, that being the courts on which they sit, as funded by the State of New Mexico, yet lack individual supervision. It follows that it is unlikely that any action bearing some potential to result in injury to another, such as traveling from one county to another by vehicle, would have been previously "requested or required" by an employer court. *See* § 41-4-3(G); *Celaya*, 2004-NMSC-005, ¶ 22. It stands to reason, then, that inquiry into whether a judge's given action is or is not within the scope of their official duties cannot turn exclusively on whether the judge was given permission or told to so act by a superior. We therefore turn, as did the district court in this case, to one of the few available sources of formal guidance on judicial behavior, the Code of Judicial Conduct (the Code of Conduct or the Code), Rules 21-001 to -406 NMRA, to inform us as to the scope of a judge's duties, with particular focus on what a judge is *authorized*, if not required or requested, to do. *See* § 41-4-3(G); *Celaya*, 2004-NMSC-005, ¶ 22.

{17} The district court's order granting summary judgment looked to the Code of Conduct to garner insight into "how . . . judges may or should perform their work, and the nature of a judge's encouragement to engage in extrajudicial activities." As

11

stated, the SJDC argues on appeal that under the Code, Judge Murdock's participation in the Event was extrajudicial and therefore not within the scope of her duties. We first acknowledge, as does the SJDC, that despite being one of the few available sources of formal guidance on judicial behavior, the Code of Conduct is by its own words "not designed or intended as a basis for civil or criminal liability." Rule 21-002(G). Cautious not to extend our reliance on the Code into such impermissible uses, our reference to it today is limited to garnering insight into what a judge is authorized to do. The SJDC's liability in this case, if any, arises not from application of the Code of Conduct, but from the harms caused by its employee, Judge Murdock, if acting as authorized within the scope of her official duties.

{18} Notably from the outset, the Code provides no exhaustive list of judicial duties dispositive of the scope of a given judicial position. Rather, it assigns mandatory but general directives with which judges must comply. *See* Rules 21-100 to -216 (stating, for example, that judges must comply with the law, hear and decide cases, and adhere to the requirements of disciplinary authorities). Indeed, many provisions of the Code of Conduct are aspirational, *see* Rule 21-001(B) (cautioning that judges "should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence"), and not strictly binding as directives or admonishments, *see* Rule 21-002(B) (acknowledging that the Code pertains to conduct that is discretionary in nature). The Code draws a

distinction between directly judicial acts—adjudication—and conduct that is nonadjudicative in nature—which it refers to as "extrajudicial conduct"—but in no way answers whether for purposes of civil vicarious liability a judge is acting within the scope of their duties in a given extrajudicial circumstance. Nor is the term "extrajudicial activity" defined in a way that may reasonably lead us to conclude it refers only to conduct that lies altogether outside of a judge's official scope of duty. *See* Rules 21-300 to -315 (providing no definition of extrajudicial activity).

{19}    It is true that the Code's committee commentary supports the view that a judge's remarks to an audience regarding the legal system or the administration of justice, while permitted and encouraged, falls within what the Code categorizes as extrajudicial. [1] Such a classification, however, does not end our inquiry by answering, one way or the other, the question of Judge Murdock's scope of duty in

---

[1]Relevant committee commentary provides the following:

[1]    To the extent that time permits, and judicial independence and impartiality are not compromised, judges are encouraged to engage in appropriate extrajudicial activities. Judges are uniquely qualified to engage in extrajudicial activities that concern the law, the legal system, and the administration of justice, such as by speaking, writing, teaching, or participating in scholarly research projects.

[2]    Participation in both law-related and other extrajudicial activities helps integrate judges into their communities, and furthers public understanding of and respect for courts and the judicial system.

Rule 21-301 comm. cmt. 1-2

13

conjunction with the Event. Rather, by referencing the propriety of both judicial and extrajudicial activities, it becomes clear that the performance of a broad variety of activities by a judicial officer is not only permissible, but desirable. We note that judges are often required, by virtue of their position, to engage in conduct that is nonadjudicative in nature, in that such conduct does not directly relate to presiding over cases, but is a requirement of their position nonetheless. For instance, judges must from time to time sit on the district court judge's nominating committees, *see* N.M. Const. art. VI, §§ 35, 36 (requiring one justice of our Supreme Court, one judge from the Court of Appeals, and one judge from the district court from that judicial district to sit as members of the committee), even though such conduct is neither expressly required by the Code of Conduct, *see* Rules 21-200 to -216, nor is it directly related to presiding on cases. Sitting as a member of a nominating committee fits within the category of extrajudicial activity, which "concern[s] the law, the legal system, and the administration of justice." Rule 21-301 comm. cmt. 1. It is also required by the constitution of New Mexico. *See* N.M. Const. art. VI, §§ 35, 36.

{20}    Similarly, judges must often address our Legislature or its subcommittees on budgetary and other matters, which pertain directly to their official title and duties. *Cf.* Rule 21-302 (permitting but not requiring judges to appear before governmental bodies "in connection with matters concerning the legal system or the administration of justice" as a form of extrajudicial conduct). Thus, from the standpoint of the Code

of Conduct, we conclude that "extrajudicial activities" as categorized therein are not automatically outside the realm of a judicial duty within the meaning of the TCA. As applied here, this conclusion recognizes that even if Judge Murdock's attendance at the Event was extrajudicial, as categorized in the Code of Conduct, it is not necessarily outside the scope of her duties. As stated, the Code encourages judges to engage in extrajudicial activity. Rule 21-301 comm. cmt. 1-2. Even if the Code's differentiation between judicial and extrajudicial activities was dispositive as to application of the triggering nexus in *Celaya*, absent any indication to the contrary we consider the word "encourage" within the rule to "authorize" judges to engage in extrajudicial conduct as contemplated by the TCA's applicable exception to employer immunity. *See* § 41-4-3(G); § 41-4-5.

{21} Having concluded both that extrajudicial activity, as contemplated by the Code of Conduct, is not necessarily outside of a judge's official scope of duties and that judges are "authorized" to engage in such activity within the meaning of Section 41-4-3(G), we now turn to our existing case law to resolve the inquiry at hand: whether Judge Murdock was acting within her scope of duties while attending the Event in Socorro. Chief among these cases is *Celaya* and the nexus requirement set forth therein. *See* 2004-NMSC-005, ¶ 26 (indicating that there must be a "connection between the public employee's actions at the time of the incident and the duties the

15

public employee was requested, required or authorized to perform" (internal quotation marks and citation omitted)).

{22} Here, given Judge Murdock's duty as a presiding judge within the SJDC to further the district court's interests in accomplishing its drug court mission, we conclude there to be a sufficient connection between her attendance at the Event and the duties the SJDC requested, required or authorized her to perform, however impliedly, such that she was acting in an official capacity while there. *See id.* The fact that she voluntarily chose to attend the Event as a way of fulfilling her duty to support the district court's interests in effective drug court proceedings, rather than being requested or required to attend by a superior, does not mean that she was not impliedly authorized to further the district court's goals or objectives by attending the Event. The Event was sponsored and organized by a contractor of the SJDC that plays a vital role in accomplishing the SJDC's goals regarding drug abuse. The SCCAP provides benefits to the SJDC as well as pretrial services critical to the court's functioning. The Event itself was intended to celebrate drug court participants' progress with recovery from substance abuse, which in turn furthers the SJDC's purpose underlying its adult drug program. Judge Murdock is a judge within the SJDC who presides over her own drug court in Torrance County and was asked to attend the Event because of her title and role. Indeed, she was introduced at the Event as a judge and her attendance there served as an endorsement from the SJDC

16

itself. What's more, there is no evidence in the record before us that Judge Murdock attended the event for any personal reason or gained any meaningful personal benefit from her attendance.

{23} These facts establish a sufficient connection between Judge Murdock's attendance at the Event and her official duties as a judge within the SJDC such that the nexus requirement announced in *Celaya* is satisfied. *See* 2004-NMSC-005, ¶ 26. Indeed, we see no other meaningful purpose in Judge Murdock's attendance beyond furthering the SJDC's goals regarding drug use and aiding the court's drug treatment programs. *Id.* (emphasizing the connection between the employee's conduct at the time of the tort and the benefit such conduct conferred on the employer).

{24} While the SJDC argues that Judge Murdock may have been attending the event to garner support for an upcoming retention election, the fact that judges may incidentally benefit from public appearances for purposes of election does not morph their attendance at otherwise work-related events to conduct outside of their scope of duties. Based on this fact, as well as the preceding analysis, we conclude Judge Murdock was acting within the scope of her duties while she attended the Event in Socorro.

**Judge Murdock's Drive Home From the Event**

{25} Having so concluded, we now address whether Judge Murdock was also within the scope of her duties while traveling home from the Event, when the

17

accident in this case occurred. *See* § 41-4-5 (waiving governmental immunity for "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle").

{26} We begin by noting that New Mexico courts have not yet directly addressed public liability under the TCA regarding travel to and from work in a personal vehicle. *See Celaya*, 2004-NMSC-005, ¶¶ 26-27 (remanding the case for further factual development regarding the purpose of a public employee's travel and stopping short of determining whether the employee was acting within the scope of his duties while driving home in a government vehicle); *Medina*, 1999-NMCA-011, ¶ 21 ("We need not in this case, and therefore do not, decide whether a line should be drawn at coming and going from work."). Because of this lack of precedent, the district court, led somewhat by the parties, looked to the "going-and-coming rule," used in cases arising under the New Mexico Workers' Compensation Act (WCA), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017), to determine that Judge Murdock was acting within the scope of her duties while driving home from the Event in Socorro. Generally, however, when confronted by a lack of precedent regarding the TCA, our courts have looked to the common law for guidance, not the WCA. *See Medina*, 1999-NMCA-011, ¶ 13 ("Analysis of the common law doctrine of scope of employment, about which there is abundant authority, while not precisely

18

on point in this case involving the [TCA], nonetheless reinforces our decision here."); *Rivera v. N.M. Highway & Transp. Dep't*, 1993-NMCA-057, ¶ 5, 115 N.M. 562, 855 P.2d 136 ("[B]ecause there is a relative wealth of law on the issue of course and scope of employment as compared to the issue of 'scope of duties' under the [TCA], we look to authority on course and scope of employment.").

{27} Fortunately, here, as we explain below, New Mexico appellate courts have provided sufficient guidance regarding the vicarious liability of public employers under the TCA that we need not rely on principles from outside areas of law. We, therefore, depart from the district court's reliance on the WCA, and conclude, based on our existing TCA case law and the reasons set forth below, that Judge Murdock was indeed acting within the scope of her duties when the accident occurred. "[W]e can affirm if the district court was correct for any reason that was before it on the basis of the presentations of the parties." *Romero v. Bd. of Cnty. Comm'rs*, 2011-NMCA-066, ¶ 7, 150 N.M. 59, 257 P.3d 404.

{28} There are two principal cases that guide our analysis regarding whether a public employee is acting within their scope of duties while commuting to and from work. The first is *Medina*, 1999-NMCA-011. *Medina* involved an accident between a deputy sheriff and another vehicle while the deputy was on her way home from work in her department-issued police unit. *Id.* ¶ 1. While on her way home, and immediately before the accident, the deputy stopped briefly at her husband's place

of employment for a personal matter before continuing on and ultimately becoming involved in the accident. *Id.* ¶ 2. When considering whether the deputy was acting within her scope of duties under the TCA, this Court concluded that she was still on duty at the time of the accident and "doing her employer's business . . . because she was in her patrol unit, with her radio on, with badge and gun, and ready to respond to calls." *Id.* ¶ 21. Because the deputy was deemed to be on duty, this Court stated, "We need not in this case, and therefore do not, decide whether a line should be drawn at coming and going from work. . . . The facts of this case do not involve the more unrestrictive activity of using the car freely on personal business during off-duty or strictly on-call hours." *Id.* ¶ 21. Although not dispositive insofar as the deputy in *Medina* was subject to calls related to her position while driving home, and Judge Murdock was simply returning home from the Event, which we have determined to be within her scope of duty, *Medina* informs us that travel home from an employment duty is not per se excluded as a basis for application of the Section 41-4-5 exception to governmental entity immunity under the TCA.

{29}     The next case relevant to our inquiry is *Celaya*, 2004-NMSC-005, ¶¶ 22-28. *Celaya* involved a vehicle accident between a volunteer chaplain working for the local police department and a Wal-Mart employee. *Id.* ¶ 2. The chaplain, who was determined to be a public employee within the meaning of the TCA at the time of the accident, *id.* ¶ 20, was driving a department-issued vehicle and made a brief stop

at Wal-Mart on his way home. *See id.* ¶¶ 2, 26. While in the Wal-Mart parking lot, the chaplain drove over the employee's foot, causing injury. *Id.* ¶ 2. Despite the chaplain's assertions that he only used the vehicle when coming and going from department-related work, he could not remember at the time of the proceedings what exactly he was doing before he stopped at the Wal-Mart and whether such activity was related to his services as a chaplain for the police department. *Id.* ¶ 26. Thus, our Supreme Court could not definitively say that the chaplain's conduct at the time of the accident bore sufficient nexus to his official duties and remanded the case for further factual development to resolve the issue. *Id.* ¶¶ 27-29. In remanding, our Supreme Court made clear that if the chaplain had been returning from work he would have been within his scope of duties during his drive home. *See id.* First, the Court stated, "The undisputed record shows that, as part of [the chaplain's] duties and for the benefit of the [d]epartment, [he] was requested, required or authorized to travel between work and home in an official vehicle." *Id.* ¶ 26 (internal quotation marks omitted). The Court further stated that if the jury believed the chaplain's contention that he only drove the department vehicle on his way to and from department-related activity, the chaplain "could establish the necessary nexus between incident and scope of duties under the TCA." *Id.* ¶ 27 (internal quotation marks omitted). Thus, the only fact absent in *Celaya* preventing the chaplain from establishing that he was acting within the scope of his duties while driving home was

whether he was returning from work. *See id.* Our Supreme Court's remand in *Celaya* indicates the paramount importance of this fact when determining whether a public employee is acting within their scope of duties while driving home.

{30}     The case now before us contains that fact. As discussed in the first part of this opinion, Judge Murdock was returning from a work-related event at the time of the accident in question. Thus, we now formalize what *Celaya* seemingly compels: that a public employee who is traveling to and from work in a motor vehicle is acting within their scope of duties under the TCA while driving. This conclusion is consistent with *Celaya*'s nexus requirement, discussed above, which emphasizes the relationship between the employee's conduct at the time of injury and the duty requested, required or authorized by the employer. *See* 2004-NMSC-005, ¶ 26. In particular, the *Celaya* Court's consistent focus on conduct that benefits the employer guides our conclusion. Indeed, the basis for remand in *Celaya* was the Court's determination that whether the chaplain was travelling in a manner directly associated with his official duty was outcome determinative. *Celaya* implies, and we now hold, that when a public employee is driving to and from a work-related function, such travel benefits the employer and is necessarily "required, requested or authorized" within the meaning of the TCA. Section 41-4-3(G); *see* § 41-4-5.

Here, Judge Murdock was returning home from a work-related activity, and, therefore, her travel to and from the Event necessarily benefited the SJDC.[2]

{31}     The fact that Judge Murdock was driving in her personal vehicle when she collided with the cyclists does not change our conclusion that she was acting within the scope of her duties. We acknowledge that both *Celaya* and *Medina* involved circumstances in which the public employee was driving a government vehicle whereas here, Judge Murdock was driving one she personally owned. *See Celaya*, 2004-NMSC-005, ¶ 2; *Medina*, 1999-NMCA-011, ¶ 1. We nonetheless continue to focus our analysis on the "connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform." *Celaya*, 2004-NMSC-005, ¶ 26 (internal quotation marks and citation omitted). The reasoning in *Medina* and *Celaya* focused more on the benefit each employee was providing to their employers at the time of the underlying incident than on whether the vehicle driven was government-issued. *See Medina*, 1999-NMCA-011, ¶ 27 (explaining that the employee was, at the time of the

---

[2]We need not in this case, and therefore do not, decide whether a judge's daily commute from their home to and from the courthouse where they generally work establishes the required connection between "the public employee's actions at the time of the incident and the duties the public employee was 'requested, required or authorized' to perform." *Celaya*, 2004-NMSC-005, ¶ 26. Our Supreme Court has recognized the fact-intensive nature of the inquiry, holding that it requires consideration of "the circumstances unique to the particular case." *Id.* ¶ 15. Because these circumstances are not at issue here, we do not address them.

accident, providing a benefit to the employer and driving her vehicle helped facilitate that benefit); *Celaya*, 2004-NMSC-005, ¶ 26 (emphasizing that "as part of his duties and for the benefit of the [d]epartment, [the d]efendant was requested, required or authorized to travel between work and home in an official vehicle"). As we stated above, Judge Murdock's attendance at the Event furthered the interests of her employer, the SJDC, and her travel to and from the Event was, similar to the chaplain's travel in *Celaya*, necessarily requested, required or authorized by the SJDC.

{32}  The SJDC argues that Judge Murdock's subjective belief that she was not acting within the scope of her duties while at the Event, and returning from it, help prove that employer liability should not attach to her actions. In support of this argument, the SJDC again points out that Judge Murdock specifically chose not to use her official vehicle for the trip nor did she seek reimbursement for her travel. Nonetheless, for the same reasons as those in the preceding paragraph, we do not consider an employee's subjective beliefs regarding the nature of their activities to determine scope of duty. *See Medina*, 1999-NMCA-011, ¶ 25 (explaining that the "[d]efendant's opinion of whether she was on duty or off duty is not dispositive of the issue of whether she was acting within the scope of her duties, which . . . is subject to a more comprehensive analysis"). Instead, our focus is fixed on whether the employee's conduct has a sufficient nexus to the duties requested, required or

24

authorized by the public body employer. *Celaya*, 2004-NMSC-005, ¶¶ 27-28. As we stated above, such a determination may be made by ascertaining what benefit, if any, the employee's conduct conferred on the employer or if such conduct furthered the interests of the employer. For the same reasons as those we stated above, Judge Murdock's attendance at the Event, and her associated travel, provided meaningful benefit to the SJDC's mission regarding its drug courts, and her personal belief that she was acting outside her scope of duties does not change this conclusion. Thus, under the guidance set forth in *Celaya*, we conclude that Judge Murdock was acting within the scope of her duties while driving home from the Event in Socorro, and the SJDC is liable for the harms she caused in the ensuing accident.

**CONCLUSION**

{33}     For the reasons set forth above, we affirm.

{34}     **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**JANE B. YOHALEM, Judge**


_____
**GERALD E. BACA, Judge**